[Cite as *In re R.S.*, 2013-Ohio-5576.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 99562**

---

## IN RE: R.S.

## A Minor Child

---

## JUDGMENT:
AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. DL 12108457

**BEFORE:**   Kilbane, J., Boyle, P.J., and E.A. Gallagher, J.

**RELEASED AND JOURNALIZED:**   December 19, 2013

**ATTORNEY FOR APPELLANT**

Bryan Byrne
5403 Detroit Avenue
Cleveland, Ohio 44102

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
Robert Christyson
Aleksandra Chojnacki
Assistant County Prosecutor
The Justice Center - 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

MARY EILEEN KILBANE, J.:

{¶1} Appellant, R.S., appeals from the determination finding him delinquent in connection with acts that would constitute kidnapping and gross sexual imposition if committed by an adult. For the reasons set forth below, we affirm.

{¶2} On May 15, 2012, a complaint was filed in the Cuyahoga County Court of Common Pleas, Juvenile Division, alleging that appellant was delinquent in connection with kidnapping, rape, and gross sexual imposition. On June 11, 2012, the state provided defense counsel with discovery, which included the witnesses' names and statements, appellant's statement, the victim's statement, a video from the location of the incident, and a video of appellant's interview with police. The court held pretrials on July 31, 2012, and September 4, 2012, and the matter was scheduled for trial on October 10, 2012.

{¶3} On the morning of trial, appellant's counsel filed a motion for continuance in which he alleged that he had difficulty playing two discs of video recordings provided to him during discovery, and that he later attempted to watch the videos at the prosecuting attorney's office, but could not clearly hear them. In addition, counsel believed that other videos relevant to the matter were not provided. The state objected, based upon the untimeliness of the motion, and informed the court that there was no additional evidence, and it had provided the defense with all of its videos. The trial court denied the motion, but advised the parties that it would reconsider the issue again if further information established that discovery had been incomplete. Appellant's counsel also asked the court

to permit appellant's stepfather to address the court. The trial court concluded that the request was not appropriate and denied it.[1]

{¶4} The parties stipulated that appellant is a juvenile, and the state presented testimony from the victim A.B., her friend A.D., and five other witnesses.

{¶5} A.B. testified that she and appellant attended high school together, but she has since graduated. She considered him a friend, but did not "hang out with him." They did not call each other and never dated. On the day of the incident, she and two friends went to the Brooklyn Recreation Center. She intended to go into the pool, but decided to first go into the jacuzzi to warm up. Appellant entered the jacuzzi and began casually talking to her; however, as they talked, he began moving closer and closer to her. A.B. had her left leg on the bench, and appellant positioned his back against her leg, which made her feel uncomfortable. He also began making sexual remarks to her and asking her to go into the family changing room with him. A.B. started to move away, and he then pushed his finger into her vagina. A.B. testified that she felt embarrassed and immediately left the jacuzzi and went into the pool with her friends.

{¶6} A.B. next testified that a younger child, I.D., was at the pool alone, and he began to swim with her and her friends. While A.B. was in the pool, appellant was making gestures, trying to get her out of the pool to join him in the family changing room, but she ignored him. When A.B. finally exited the pool, she went to pick up her towel

---

[1]There is no evidence in the record that the stepfather is a licensed attorney.

and, at that point, appellant grabbed the towel and walked down the hallway toward the changing area. A.B. followed appellant, making an effort to retrieve her towel. By the time she was close enough to grasp the towel, appellant was in the changing room area, and he pulled her in and closed the door. A.B. stated that she tried to leave, but he was standing in front of the door. He then pushed her over to a metal bench and started groping her. A.B. tried to get away and yelled at appellant to let her go. Appellant finally let her go when I.D. came into the changing room. She then left the changing area and reported the incident to maintenance worker Dexter Moran ("Moran"). At this time, she stated that she had "almost" been raped. She testified that this referred to what happened in the changing room, and that she did not know that digital penetration, as she testified regarding the incident in the hot tub, could constitute the offense of rape. She also told one of her friends what had happened, and the friend called her mother. The matter was then reported to the police.

{¶7} A.B. acknowledged that she did not immediately tell the police about the incident in the jacuzzi. She explained that her mother was present and was becoming very tense, so she told the officers that portion of the incident at the police station, outside of her mother's presence.

{¶8} A.D. testified that she was at the recreation center with A.B., and that the girls saw appellant there. At one point, she, A.B. and appellant were all together in the jacuzzi, but the girls returned to the pool at various points, leaving the victim and appellant alone. A.D. next heard A.B. asking appellant for her towel, and then they

walked toward the changing area. A.B. approached her later and said that she wanted to go home, and explained that she had been molested in the changing area, and that the appellant stopped only after I.D. entered the room. The girls told workers at the recreation center about the incident, and the workers in turn called the police.

{¶9} I.D., who was 13 years old at the time of trial, testified that while he was swimming at the recreation center, A.B. told him that appellant kept looking at her. Later, appellant grabbed A.B.'s towel, and she went to the changing room to get it. I.D. stated that he thought something strange had happened, so he went into the changing room to look for her. He tried to open the door, but it was locked. He entered through a second door and observed that appellant had A.B. pinned in the corner and she was crying. Appellant told the boy to close the door and then tried to slam it shut, hitting I.D.'s foot. At that point, A.B. repeatedly thanked I.D. and told him to stay. I.D. pushed his body against the door to keep it open. Appellant then ran out and I.D. followed him.

{¶10} Moran testified that he was acquainted with both the appellant and the victim from school. On the day of the incident, A.B. ran up to him and said that appellant took something from her to get her to the changing area and then kissed her and tried to remove her bathing suit. According to this witness, A.B. stated that appellant almost raped her and that the attack stopped only when a younger child entered the room. Moran then reported the incident to his manager.

{¶11} The state's remaining witnesses, Brooklyn police detective Alex Zamblauskas and Officer Adam McQuaid, established that the police took a statement

from A.B. and also obtained security video from the recreation center. The video surveillance shows appellant entering the changing room and depicts the victim in the hallway leading to the changing room a short time later. Appellant is next seen exiting the changing room and a younger child chasing after him.

{¶12} The officers also established that they spoke with appellant about the incident, and he stated that he and A.B. were in the hot tub together. He stated that he then took A.B.'s towel and went into the changing room, but he immediately gave it back to her when she came in after it.

{¶13} The trial court found appellant to be delinquent in connection with the kidnapping and gross sexual imposition charges. Appellant was then placed on community control supervision pending further order of the court. The court ordered that he complete a sexual offender treatment program, perform 50 hours of community service, and complete a polygraph examination. Thereafter on January 16, 2013, the trial court determined that appellant is a juvenile offender registrant and designated him a Tier I offender.

{¶14} Appellant now appeals and assigns three errors for our review.

Assignment of Error One

**The trial court's denial of Appellant's request to continue the trial denied Appellant his U.S. and Ohio Constitutional rights to effective assistance of counsel.**

**{¶15}** The juvenile court is vested with broad discretion to grant or deny continuances, and this decision is reviewed under an abuse of discretion standard. *In re Jordan B.*, 6th Dist. Lucas No. L-06-1161, 2007-Ohio-2537, ¶ 16; *In re A.C.*, 6th Dist. Lucas No. L-10-1025, 2010-Ohio-4933, ¶ 127.

**{¶16}** Pursuant to Juv.R. 23, "[c]ontinuances shall be granted only when imperative to secure fair treatment for the parties." Juv.R. 29(A) states in part that "upon a showing of good cause, the adjudicatory hearing may be continued and detention or shelter care extended."

**{¶17}** Pursuant to Loc.R. 49, entitled "Continuances and Advancements,"

(A) Requests for continuances or advancements will be made in accordance with Superintendence Rule 41 and Juvenile Rules 19 and 23. All requests for continuances or advancements shall be filed with the Clerk of Court and submitted to the assigned jurist in writing at the earliest time possible, no less than seven (7) working days before the day of trial or hearing. The Court shall set a date certain for the next hearing date upon the granting of a continuance.

(B) All requests for continuances shall contain the following information:

(1) The date on which the need for the continuance arose;
(2) The reasons for requesting the continuance;
(3) The date on which all other attorneys of record and guardians ad litem on the case were contacted, and whether these attorneys and guardians ad litem agree on the need for a continuance; and,
(4) The earliest date that all parties will be ready to proceed.

(C) No case will be continued on the day of trial or hearing except for good cause shown, which cause was not known to the party or counsel prior to the date of trial or hearing, and provided that the party and/or counsel have used diligence to be ready for trial and have notified or made diligent efforts to notify the opposing party or counsel as soon as he/she became aware of the necessity to request a postponement. This rule may not be waived by consent of counsel.

The trial court's decision must comport with due process, however. *In re A.C.* at ¶ 128.

The *In re A.C.* court explained:

> The right of due process requires that "a defense counsel be afforded the reasonable opportunity to prepare his case." *State v. Sowders* (1983), 4 Ohio St.3d 143, 144, 4 Ohio B. 386, 447 N.E.2d 118. The Supreme Court of Ohio has recognized: "'There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.'" *State v. Unger* (1981), 67 Ohio St.2d 65, 67, 423 N.E.2d 1078, quoting *Unger v. Sarafite* (1964), 376 U.S. 575, 589, 84 S.Ct. 841. Accordingly, the Ohio Supreme Court in *Unger* adopted a balancing test in which a trial court's right to control its own docket and the public's interest in an efficient judicial system are weighed against any potential prejudice to the defendant. *Id.* at 67. Among other factors, a court should consider "the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case." *Id.* at 67-68. *See In re S.R.*, 6th Dist. Ottawa No. OT-09-024, 2010-Ohio-3073, ¶ 22.

{¶18} We find no abuse of discretion in this matter. The motion for continuance did not meet the requirements of the juvenile rules or the local rules of court because it was untimely and did not contain the information required under Juv.R. 29. Moreover, although appellant's counsel explained his difficulty in viewing the discovery, it was established by the time of trial that the prosecuting attorney had made arrangements for him to view the videos, he did in fact view them, and no additional materials remained outstanding. Further, the video only shows appellant going into the changing area and coming out, and he admitted to police that he was in the changing area with A.B.

Appellant's counsel therefore did not demonstrate that the continuance was imperative to secure fair treatment for his client. In addition, counsel contributed to his own dilemma by not raising the issue earlier, and requested an open-ended, last minute delay. The trial court notified the parties that it would revisit the matter if necessary. The decision did not violate appellant's right to due process. The decision also reflected the court's proper control of its docket and the public's interest in an efficient judicial system and was not prejudicial to appellant.

{¶19} This assignment of error is without merit.

Assignment of Error Two

**Appellant received ineffective assistance of counsel in violation of his rights pursuant to the Sixth Amendment to the United States Constitution and Section 10, Article 1 of the Ohio Constitution.**

{¶20} In order to establish a claim of ineffective assistance of counsel, appellant is required to demonstrate that (1) the performance of defense counsel was seriously flawed and deficient, and (2) the result of appellant's trial or legal proceeding would have been different had defense counsel provided proper representation. *In re D.S.*, 8th Dist. Cuyahoga No. 97757, 2012-Ohio-2213, citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Where the defendant makes an insufficient showing as to either component of the inquiry, the claim of ineffective assistance of counsel fails, and it is unnecessary for the court to consider the other component. *In re S.R.*, 6th Dist. Ottawa No. OT-09-024, 2010-Ohio-3073, ¶ 22, citing *Strickland* at 697.

**{¶21}** Appellant maintains that his trial counsel was ineffective for asking the trial court's permission for appellant's stepfather to address the court, for failing to "ask any questions that would shed light on the alleged victim's credibility," for failing to view the state's discovery video prior to trial, and for failing to follow the local rules with regard to obtaining a continuance.

**{¶22}** As to the request that appellant's stepfather address the court, the record does not demonstrate that this request, perhaps intended as a plea for mercy or fatherly understanding, seriously affected the basic fairness, integrity, or public reputation of the judicial process.

**{¶23}** As to counsel's cross-examination of the victim, the scope of cross-examination falls within the realm of trial strategy and, therefore, debatable trial tactics do not establish ineffective assistance of counsel. *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 101, citing *State v. Hoffner*, 102 Ohio St.3d 358, 2004-Ohio-3430, 811 N.E.2d 48, ¶ 45. The record in this matter demonstrates that he carefully cross-examined A.B. to refute her claim regarding penetration and regarding the incident in the changing room. Counsel exercised his duties conscientiously as to both matters and did not commit a prejudicial error.

**{¶24}** Finally, we have determined that no prejudicial error occurred in connection with the trial court's refusal to grant a continuance. In the absence of trial error, the ineffective assistance of counsel claim must fail as a matter of law.

**{¶25}** This assignment of error is without merit.

Assignment of Error Three

**Appellant's conviction for kidnapping, a felony of the first degree, was against the manifest weight of the evidence.**

{¶26} A trial court may adjudicate a juvenile as a delinquent child when the evidence demonstrates, beyond a reasonable doubt, that the child committed an act that would constitute a crime if committed by an adult. R.C. 2151.35(A); Juv.R. 29(E). Thus, in delinquency appeals, claims involving the sufficiency of the evidence and the manifest weight of the evidence are subject to the same standards of review applicable to criminal convictions. *In re Watson*, 47 Ohio St.3d 86, 91, 548 N.E.2d 210 (1989).

{¶27} In determining whether a delinquency adjudication is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence the trial court clearly lost its way and created such a manifest miscarriage of justice that the adjudication must be reversed. *In re Fortney*, 162 Ohio App.3d 170, 2005-Ohio-3618, 832 N.E.2d 1257,¶ 19 (4th Dist.), citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶28} Here, appellant argues that "there was no testimony that the victim was not left in a safe place unharmed," and that the record establishes a second-degree felony, not a felony of the first degree.

{¶29} In *State v. Bolton*, 8th Dist. Cuyahoga No. 96385, 2012-Ohio-169, ¶ 55-56, this court stated:

Whether a kidnapper releases his victim unharmed in a safe place "is not an element of the offense; rather, the accused must plead and prove it in the fashion of an affirmative defense." *State v. Sanders*, 92 Ohio St.3d 245, 265, 2001-Ohio-189, 750 N.E.2d 90; *State v. Cornute*, 64 Ohio App.2d 199, 412 N.E.2d 416 (10th Dist.1979) ("The provision in R.C. 2905.01(C), reducing kidnapping to a felony of the second degree '[i]f the offender releases the victim in a safe place unharmed' is a mitigating circumstance, rather than an element of the crime of kidnapping. It is in the nature of an affirmative defense and is to be treated as such").

"The court has no duty to give jury instructions that are neither supported by the facts nor that assist the jury." [*State v.*] *Ogletree*, [8th Dist. Cuyahoga No. 7988, 2002-Ohio-4070] at ¶ 14, citing *State v. Guster*, 66 Ohio St.2d 266, 421 N.E.2d 157 (1981), at the syllabus. In this case, it is evident that appellant failed to provide any evidence that K.K. was released unharmed. Instead, ample evidence was provided by the state that K.K. was harmed — she was raped by appellant prior to being released. As stated in *State v. Arias*, 9th Dist. No. 04CA008428, 2004-Ohio-4443, 2004 WL 1882631, ¶ 38, "it is difficult indeed to imagine that one may engage in sexual activity with another against their will and still argue that such a person is left 'unharmed.'" K.K. was not released unharmed, and therefore, the court did not act improperly in failing to read an instruction regarding this issue to the jury. *See State v. Turner*, 11th Dist. No. 2010-A-0060, 2011-Ohio-5098, 2011 WL 4552987.

*Accord State v. Carver*, 2d Dist. Montgomery No. 21328, 2008-Ohio-4631, ¶ 87.

{¶30} In this matter, appellant did not plead or prove that he released the victim in a safe place unharmed. Moreover, the delinquency adjudications were not against the manifest weight of the evidence. Viewing the record as a whole, and considering all reasonable inferences, the charges are supported by overwhelming evidence. There is believable, consistent, and compelling evidence establishing the charges. Therefore, the trial court properly adjudicated him delinquent in connection with the first-degree kidnapping charge.

{¶31} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY EILEEN KILBANE, JUDGE

MARY J. BOYLE, P.J., and
EILEEN A. GALLAGHER, J., CONCUR