[Cite as *In re D.R.S.*, 2016-Ohio-3262.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 103584**

# IN RE: D.R.S.

## JUDGMENT:
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. DL-15-105957

**BEFORE:**  E.A. Gallagher, J., Keough, P.J., and McCormack, J.

**RELEASED AND JOURNALIZED:**  June 2, 2016

**ATTORNEY FOR APPELLANT**

Jeffrey R. Froude
P.O. Box 771112
Lakewood, Ohio 44107


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY: Brian Lynch
        Scott Zarzycki
Assistant Prosecuting Attorneys
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113


**GUARDIAN AD LITEM**

Vickie Jones
P.O. Box 110771
Cleveland, Ohio 44111

EILEEN A. GALLAGHER, J.:

**{¶1}** Defendant-appellant D.R.S. appeals from an order of the Cuyahoga County Court of Common Pleas Juvenile Division ("juvenile court") adjudicating him delinquent by reason of robbery. He contends that his delinquency adjudication was not supported by sufficient evidence and was against the manifest weight of the evidence. For the reasons that follow, we affirm the decision of the juvenile court.

**Factual and Procedural Background**

**{¶2}** On April 29, 2015, the state of Ohio filed a delinquency complaint against D.R.S., age 15, charging him with aggravated robbery in violation of R.C. 2911.01(A)(1) and robbery in violation of R.C. 2911.02(A)(2). Each charge also included a forfeiture specification under R.C. 2941.1417(A). The charges related to a February 6, 2015 incident in which D.R.S. allegedly attempted to commit a theft offense against off-duty Cleveland police officer Anthony Gonzales while using a revolver-style pellet gun. D.R.S. denied the charges against him.

**{¶3}** The parties stipulated to D.R.S.'s competency and the juvenile court found him competent to participate in the proceedings. An adjudicatory hearing was held on August 25, 2015. At the adjudicatory hearing, the state presented testimony from three witnesses: Officer Gonzales (the alleged victim), B.T. (who was with D.R.S. at the time of the alleged incident) and Officer Vasile Nan (one of the Cleveland police officers who apprehended D.R.S. and investigated the alleged incident). A summary of their testimony follows.

{¶4} On February 6, 2015, at approximately 11:50 p.m., Officer Gonzales was driving his F-150 pickup truck westbound on Denison Avenue in Cleveland. He was in uniform, but off-duty, on his way to a part-time job. Officer Gonzales stopped his vehicle at a red traffic light at the intersection of West 54th Street and Denison Avenue. While he was waiting for the light to change, he observed three males walking out of a car wash bay at an angle towards his vehicle. Officer Gonzales testified that his truck was the only vehicle on the road at the time and that the three males were making "a direct, straight beeline to the truck," walking in the street rather than on the sidewalk.

{¶5} Officer Gonzales testified that one of males, later identified as D.R.S., was wearing a blue bandana[1] "underneath his eyes that came all the way down his face." When the males reached the double yellow lines of the street and continued to approach his vehicle, Officer Gonzales thought to himself, "this is not going to be good." He explained that because D.R.S. was wearing a bandana over his face, "I pretty much assumed I was about to get carjacked."

{¶6} Officer Gonzalez testified that when D.R.S. was "within two feet" of Officer Gonzales's truck, D.R.S. reached for the door handle of the truck and "pretty much simultaneously" pulled what Officer Gonzales then believed was a revolver out of his right front pants pocket. Officer Gonzales later learned that the gun was a pellet gun. He stated that the male was so close to his truck that "[i]f I would have rolled my window

---

[1]After he was shown photos of D.R.S. taken at the time he was apprehended, Officer Gonzales admitted that he had been mistaken about the color of the bandana D.R.S. had been wearing at the time of the incident and that the bandana was actually red and not blue as he had originally testified.

down, I would have been able to grab him." Officer Gonzales testified that, as soon as he saw the gun, "instinct" took over and he reached for his sidearm at his hip and "hit the gas." As he drove past D.R.S., Officer Gonzales looked over and saw D.R.S. pointing the gun at his vehicle. Officer Gonzales could not recall if, at any point, any of the males said anything but indicated that his car windows were up.

{¶7} Officer Gonzales testified that he drove his truck to the intersection of Denison Avenue and West 58th Street and turned left. He then stopped and used his police radio to report what had happened. Officer Gonzales testified that he "threw out a quick description" of the three males and indicated that "the kid with the blue bandana has a gun in his right front pocket." While he was waiting for officers to arrive, Officer Gonzales continued to observe the three males who were walking eastbound on Denison Avenue.

{¶8} Officer Nan testified that he and his partner, Officer Lynch, were "working a soft clothed unmarked vehicle detail" when they heard a call over the police radio from an off-duty officer that "somebody * * * pulled out a gun" and had "attempted a carjacking" in the area of Denison Avenue. He stated that the off-duty officer gave a description of the suspects as two juvenile males, white or possibly Hispanic, and "said something about bandanas, red, dark clothing and the location where they were walking" and that he "was observing them from afar."

{¶9} Officer Nan testified that he and Officer Lynch arrived in the area of West 50th Street and Denison Avenue "within less than a minute" and apprehended three males

that matched Officer Gonzales' description. Officer Nan indicated that the suspects were white males in their mid-teens, approximately 5'6" to 5'7" tall, and that one of them was wearing a red bandana.

{¶10} Officer Nan testified that when the officers pulled up in their vehicle, D.R.S., who was wearing a red bandana over his face, reached for what Officer Nan then believed to "a large caliber revolver." In fact, it was a black revolver-style pellet gun with a six-inch barrel, which Officer Nan described as "very, very realistic looking."

{¶11} Officer Nan testified that, when he spoke with D.R.S. and asked him what had happened, D.R.S. "admitted to the contact" with Officer Gonzales "down the street" but claimed that he was just "playing around."

{¶12} Shortly after Officers Nan and Lynch apprehended the suspects, Officer Gonzales arrived on the scene and identified D.R.S. as the person who had pointed the gun at his vehicle a few minutes earlier. Officer Gonzales also identified D.R.S. in court as the person who had pointed the gun at his vehicle. Officer Nan likewise identified D.R.S. in court as the bandana-clad suspect he and Officer Lynch had apprehended with the pellet gun.

{¶13} B.T. was the state's final witness. He testified that on the evening February 6, 2015, he was at the house of a friend, Z.C., when D.R.S. came over to hang out with Z.C.'s brother. B.T. indicated that he knew D.R.S. because D.R.S. was a friend of his brother's but that he had hung out with D.R.S. only once before.

**{¶14}** B.T. testified that D.R.S. brought a fake pellet gun with him to Z.C.'s house. As to whether the gun looked real, B.T. stated, "I guess, yeah." B.T. testified that at approximately 11:00 p.m., the three boys went over to the car wash on the corner of West 56th Street and Denison Avenue to do "[f]ree running," "[f]lips and like Parkour kind of like flips." He testified that as they were walking from the car wash, "there was a car passing"[2] and that D.R.S. pointed the gun in the air and shot it "like two times." B.T. indicated that when D.R.S. pulled the trigger, "it made a noise" but that "it had no ammo or anything." B.T. testified that when D.R.S. pulled the trigger, he was "pretty far, like 20 feet" from the passing vehicle. After the car passed, the three boys continued walking to the Sav-Way store on West 52nd Street. A few minutes later, the police pulled up, pointed guns at the three boys and ordered them to get on the ground.

**{¶15}** B.T. testified that when he first spoke with the police, he lied and told them that D.R.S. had "robbed someone." He stated that he had lied because "I was kind of scared in that police thing. And then there was nothing I could say, because we had a gun." He further explained:

> A.  I thought I was going to jail. And I kind of just wanted to blame it on someone so I wouldn't get in trouble.
>
> THE COURT: Blame what on someone.
>
> THE WITNESS: Like robbing someone, so.

---

[2]It is unclear from B.T.'s testimony whether the "car passing" was Officer Gonzales' F-150 pickup truck or some other vehicle.

**{¶16}** The state rested its case and moved to have its exhibits — four photographs of the scene, D.R.S. wearing a red bandana and the pellet gun — admitted into evidence. The defense had no objection to the admission of these exhibits and the juvenile court admitted the exhibits.

**{¶17}** D.R.S. then moved to dismiss the complaint pursuant to Juv.R. 29, arguing that the state had presented no evidence that the pellet gun was a deadly weapon or that D.R.S. had "any intent for a theft offense." The juvenile court denied the motion. No witnesses testified for the defense.

**{¶18}** On September 1, 2015, the juvenile court adjudicated D.R.S. delinquent on the robbery charge and the accompanying forfeiture specification. However, the juvenile court found D.R.S. not delinquent of aggravated robbery, concluding that the state had failed to prove beyond a reasonable doubt that the pellet gun used in the incident was a deadly weapon.

**{¶19}** At the dispositional hearing, the court ordered that D.R.S. be placed on community control for two years or until the community control officer files a motion for termination of community control or until further order of the court, that he continue family and individual counseling and that he perform 40 hours of community service plus an additional 25 hours of community service in lieu of court costs. D.R.S. appealed, raising the following assignment of error for review:

> The trial court erred in denying defense motion for acquittal pursuant to Juv.R. 29 and finding delinquency against the manifest weight and sufficiency of the evidence.

**Law and Analysis**

{¶20} D.R.S. argues that the state failed to present sufficient evidence to support his adjudication of delinquency for robbery and that the trial court should have, therefore, granted his Juv.R. 29 motion for acquittal. He also argues that his adjudication of delinquency for robbery is against the manifest weight of the evidence. We disagree.

**Sufficiency of the Evidence**

{¶21} A juvenile court may adjudicate a juvenile to be a delinquent child when the evidence demonstrates, beyond a reasonable doubt, that the child committed an act that would constitute a crime if committed by an adult. R.C. 2151.35(A); Juv.R. 29(E)(4); *In re R.S.*, 8th Dist. Cuyahoga No. 99562, 2013-Ohio-5576, ¶ 26; *In re Williams*, 3d Dist. Marion No. 9-1-64, 2011-Ohio-4338, ¶ 18. Due to the "'inherently criminal aspects' of delinquency proceedings * * *'" claims involving the sufficiency of the evidence and the manifest weight of the evidence in delinquency appeals are subject to the same standards of review applicable to criminal convictions. *In re T.J.*, 9th Dist. Summit No. 27269, 2014-Ohio-4919, ¶ 19, quoting *In re R.D.U.*, 9th Dist. Summit No. 24225, 2008-Ohio-6131, ¶ 6; *In re R.S.* at ¶ 26, citing *In re Watson*, 47 Ohio St.3d 86, 91, 548 N.E.2d 210 (1989); *see also In re S.H.*, 8th Dist. Cuyahoga No. 100529, 2014-Ohio-2770, ¶ 17, 25.

{¶22} When reviewing sufficiency of the evidence, we must determine "'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable

doubt.'"  *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.  We do not assess whether the state's evidence is to be believed but whether, if believed, the evidence admitted at trial supported the adjudication.  *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997); *Jenks* at paragraph two of the syllabus.

{¶23} In other words, we do not consider the credibility of the witnesses when reviewing a sufficiency-of-the-evidence claim.  *State v. Williams*, 8th Dist. Cuyahoga No. 98528, 2013-Ohio-1181, ¶ 27; *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216, ¶ 79.  We assume the state's witnesses testified truthfully and determine whether that testimony (and any other evidence presented) satisfies each element of the offense.  The testimony of one witness, if believed by the factfinder, is enough.  *See, e.g., State v. Adams,* 5th Dist. Licking No. 14-CA-25, 2014-Ohio-4233, ¶ 14 ("the testimony of one witness, believed by the [trier of fact], is sufficient to establish a fact in question"); *see also State v. Strong*, 10th Dist. Franklin No. 09AP-874, 2011-Ohio-1024, ¶ 42 ("the testimony of one witness, if believed by the [trier of fact], is enough to support a conviction").

{¶24} The juvenile court found D.R.S. delinquent of robbery in violation of R.C. 2911.02(A)(2).  R.C. 2911.02(A)(2) provides, in relevant part: "No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall * * * [i]nflict, attempt to inflict, or threaten to inflict physical harm on another." Pursuant to R.C. 2911.02(C)(2), a violation of any of the theft statutes enumerated in R.C.

2913.01(K) can serve as the underlying "theft offense" to a charge of robbery. Here, the applicable theft statute is R.C. 2913.02(A), which provides:

> No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
>
> (1) Without the consent of the owner or person authorized to give consent;
>
> (2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent;
>
> (3) By deception;
>
> (4) By threat;
>
> (5) By intimidation.

{¶25} A person acts "purposely" when it is the person's "specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." R.C. 2901.22(A). A person acts "knowingly" when the person "is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). "A person has knowledge of circumstances when the person is aware that such circumstances probably exist." *Id.*

{¶26} D.R.S. argues that his delinquency adjudication was not supported by sufficient evidence because there was no evidence of any "verbal exchange" between

D.R.S. and Officer Gonzales or any other evidence that could support a finding that D.R.S. acted with the requisite intent to commit a theft offense.[3]  We disagree.

**{¶27}** The intent required to commit a theft offense "'may be inferred from the circumstances surrounding the crime.'"  *State v. Fasino*, 8th Dist. Cuyahoga No. 101788, 2015-Ohio-2265, ¶ 15, quoting *State v. Herring*, 94 Ohio St.3d 246, 266, 2002-Ohio-796, 762 N.E.2d 940; *State v. McGowan*, 8th Dist. Cuyahoga No. 96608, 2011-Ohio-6166, ¶ 36.  "Because intent dwells in the mind of the accused," *Fasino* at ¶ 15, citing *State v. Treesh*, 90 Ohio St.3d 460, 484-485, 739 N.E.2d 749 (2001), it is "not susceptible of objective proof" and must be "gathered" and inferred from the act itself, the manner in which the act is done, the means used and all of the other surrounding facts and circumstances.  *See, e.g., State v. Garner*, 74 Ohio St.3d 49, 60, 656 N.E.2d 623 (1995); *State v. Lott,* 51 Ohio St.3d 160, 168, 555 N.E.2d 293 (1990).

**{¶28}** Although there is no evidence of any verbal exchange between D.R.S. and Officer Gonzales demonstrating an intent on the part of D.R.S. to deprive Officer Gonzales of his property, we find, viewing the evidence in the light most favorable to the state, that D.R.S.'s threatening nonverbal actions and the totality of the circumstances surrounding those actions was sufficient to establish that D.R.S. acted with the requisite intent to commit a theft offense.

---

[3]Because D.R.S. does not dispute that there was sufficient evidence of the remaining elements of robbery and does not claim that the juvenile court's findings as to those elements was against the manifest weight of the evidence, we do not address those other elements in detail here.

{¶29} Officer Gonzales testified that D.R.S., wearing a bandana "pretty much underneath his eyes that came all the way down his face," walked at an angle from the bay of the car wash and made a "direct, straight beeline" towards his vehicle. He further testified that when D.R.S. was "within two feet" of the truck, D.R.S. pulled a gun out of his right front pants pocket while reaching for the door handle of the truck, then pointed the gun at the truck.

{¶30} The juvenile court could have reasonably inferred from D.R.S.'s actions (1) in pulling a weapon from his pants pocket as he reached for the door handle of Officer Gonzales' vehicle (2) while wearing a bandana disguising his face at night, in the dark, and (3) pointing the gun at the vehicle as it drove off that D.R.S. acted "with purpose to deprive [Officer Gonzales] of [his] property" and "knowingly" attempted to "obtain or exert control over * * * the property" by threatening to inflict physical harm. *See, e.g., State v. Maynard*, 8th Dist. Cuyahoga No. 39573, 1979 Ohio App. LEXIS 11056, *2-5, 11-18 (Nov. 8, 1979). (state "adduced sufficient evidence of [defendant's] intent to commit a theft offense" with a firearm against night manager of a McDonald's restaurant where witnesses testified that defendant and three other males were apprehended at 1:30 a.m. in a car parked 200-300 feet from the restaurant, the defendant and another male had their faces blackened with shoe polish, a rifle, pipe wrench, baseball bat, wig, ski mask, stocking mask, a black shoe polish top and a pair of handcuffs were found in the car, the defendant had previously worked at the restaurant at closing and the store manager had heard someone banging on and pulling at the rear door of the restaurant at around 1:00

a.m.).    Accordingly, D.R.S.'s adjudication of delinquency for robbery was supported by sufficient evidence, and the juvenile court did not err in denying D.R.S.'s motion for acquittal.

**Manifest Weight of the Evidence**

{¶31} We likewise find no merit to D.R.S.'s claim that his delinquency adjudication was against the manifest weight of the evidence.    In determining whether a delinquency adjudication is against the manifest weight of the evidence, we review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence the juvenile court clearly lost its way and created such a manifest miscarriage of justice that the adjudication must be reversed.    *In re R.S.*, 2013-Ohio-5576, at ¶ 27; *Thompkins* 78 Ohio St.3d at 387, 678 NE.2d 541, citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).    "The use of the word 'manifest' means that the trier of fact's decision must be plainly or obviously contrary to all of the evidence.    This is a difficult burden for an appellant to overcome because the resolution of factual issues resides with the trier of fact."    *State v. Battiste,* 8th Dist Cuyahoga No. 102299, 2015-Ohio-3586, ¶ 19.    The credibility of the witnesses and the weight to be given the evidence are primarily for the trier of fact to assess.    *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.    The trier of fact is in the best position to take into account inconsistencies, along with the witnesses' manner, demeanor, gestures and voice inflections, in determining whether the proffered testimony is credible.    *State v.*

*Holloway,* 8th Dist. Cuyahoga No. 101289, 2015-Ohio-1015, ¶ 42, citing *State v. Kurtz*, 8th Dist. Cuyahoga No. 99103, 2013-Ohio-2999, ¶ 26.

**{¶32}** D.R.S. contends that the evidence weighs heavily against his adjudication of delinquency for robbery because (1) Officer Gonzales' testimony was improbable and contradictory and (2) there were numerous discrepancies between Officer Gonzales' testimony and B.T.'s testimony. Once again, we disagree.

**{¶33}** A defendant is not entitled to reversal on manifest weight grounds simply because the factfinder heard inconsistent or contradictory testimony. *In re D.M.D.*, 10th Dist. Franklin No. 14AP-289, 2015-Ohio-1134, ¶ 18; *State v. Wade*, 8th Dist. Cuyahoga No. 90029, 2008-Ohio-4574, ¶ 38, citing *State v. Asberry*, 10th Dist. Franklin No. 04AP-1113, 2005-Ohio-4547, ¶ 11. The decision whether, and to what extent, to believe the testimony of a particular witness is "within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Johnson*, 8th Dist. Cuyahoga No. 99822, 2014-Ohio-494, ¶ 54. The juvenile court was, therefore, "free to believe all, some, or none of the testimony of each witness appearing before it." *State v. Malone*, 8th Dist. Cuyahoga No. 101305, 2015-Ohio-2150, ¶ 29, citing *State v. Ellis*, 8th Dist. Cuyahoga No. 98538, 2013-Ohio-1184, ¶ 18.

**{¶34}** Officer Gonzales and B.T. presented very different versions of what occurred on the evening at issue. B.T. testified that D.R.S. was 20 feet away from a passing car and simply shot the unloaded pellet gun into the air as the car passed. Officer Gonzales testified that D.R.S. was within two feet of his vehicle when D.R.S. pulled a

gun out of his pants pocket, reached for Gonzales' vehicle's door handle and then pointed the gun at the vehicle. D.R.S. argues that the juvenile court should have "defer[red]" to B.T.'s version of events over Officer Gonzales' version of events because Officer's Gonzales' testimony is improbable and "does not make sense." Specifically, D.R.S. argues that if Officer Gonzales was seated "up high" in his F-150 truck when D.R.S. was within two feet of the vehicle, it would have been very difficult for him to see D.R.S. pull a gun out of his front pants pocket, i.e., that Officer Gonzales "would have had to be looking sideways and down to see D.R.S. reach for a gun." He also points to alleged inconsistencies in Officer Gonzales' testimony as to whether he "drove away" or "drove past" D.R.S. and questions how Officer Gonzales could have seen D.R.S. point the gun at his vehicle if he "hit the gas" and was driving away as soon as D.R.S. pulled the gun out of his front pants pocket. D.R.S. asserts that B.T.'s testimony that the boys were 20 feet away is "more believable" and, therefore, "should have been weighted more heavily" by the juvenile court.

{¶35} There were, however, a number of reasons for the juvenile court to disbelieve B.T.'s version of the events, including (1) B.T.'s testimony that he had lied to the police when he told them, shortly after the incident, that D.R.S. "robbed someone" and (2) B.T.'s claim that he could not recall anything distinctive about what D.R.S. was wearing that evening — notwithstanding that the police photographs show that D.R.S. was wearing a brightly colored bandana covering nearly his entire face at the time he was apprehended. In addition, Officer Nan testified that D.R.S. had admitted, when D.R.S.

spoke with officers shortly after the incident, to having had a "contact with Officer Gonzales down the street." Under B.T.'s version of events, there was no "contact" between D.R.S. and the driver of the "car passing by" when D.R.S. shot the pellet gun in the air.

**{¶36}** It was within the province of the juvenile court, as the trier of fact, to believe Officer Gonzales' version of the events and to disbelieve B.T.'s version of the events. "'The choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact.'" *In re N.J.M.*, 12th Dist. Warren No. CA2010-03-026, 2010-Ohio-5526, ¶ 39, quoting *State v. Awan*, 22 Ohio St.3d 120, 123, 489 N.E.2d 277 (1986). The juvenile court judge was present in the courtroom with the witnesses; therefore, he was in the best position to assess their credibility.

**{¶37}** After careful review of the record in its entirety, weighing the strength and credibility of the evidence presented and the inferences to be reasonably drawn therefrom, we cannot say that the juvenile court clearly lost its way and created such a manifest miscarriage of justice that D.R.S.'s delinquency adjudication by reason of robbery was against the manifest weight of the evidence.[4]

---

[4]D.R.S. also argues that the juvenile court "incorrectly weighed the evidence" by referencing, in its journal entry setting forth its finding of delinquency, B.T.'s statement to police that D.R.S. had "robbed someone," which he later recanted at the hearing. D.R.S. argues that the "weight of the recantation" — made "in the comfort of the court" — "is greater [than] the original" statement — "made under conditions of duress" at the time the boys were apprehended. For the reasons set forth above, we find that the juvenile court's finding of delinquency by reason of robbery was both supported by sufficient evidence and was not against the manifest weight of the evidence, regardless

**{¶38}** Accordingly, D.R.S.'s assignment of error is overruled.

**{¶39}** Judgment affirmed.

It is ordered that appellee recover from appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the Cuyahoga County Court of Common Pleas, Juvenile Division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, JUDGE

KATHLEEN ANN KEOUGH, P.J., and
TIM McCORMACK, J., CONCUR

---

of whether B.T.'s statement is considered.  Accordingly, this argument is meritless.