[Cite as *State v. Jackson*, 2026-Ohio-741.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| v. | : | No. 115292 |
| SHAYNA JACKSON, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED
**RELEASED AND JOURNALIZED:** March 5, 2026

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-25-699657-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Erica Sammon, Assistant Prosecuting Attorney, *for appellee.*

Chedid and Co., LLC, and Jed Chedid, *for appellant.*

EMANUELLA D. GROVES, J.:

{¶ 1} Defendant-appellant Shayna Jackson ("Jackson") appeals her conviction for endangering children. For the reasons that follow, we reverse the conviction.

**Procedural and Factual History**

{¶ 2} In February 2025, a grand jury convened and issued an indictment alleging that Jackson committed the following crimes against her ward, a 14-year-old child: strangulation, a felony of the fifth degree (Count 1); domestic violence, a misdemeanor of the first degree (Count 2); and endangering children, a misdemeanor of the first degree (Count 3).

{¶ 3} A trial commenced in June 2025. The child testified as follows. On February 12, 2025, she was called to the principal's office for drinking alcohol at school. The child admitted that her friend had alcohol but denied drinking more than a sip. The child testified that she was expelled from school. As a result of the infraction, the school called Jackson who came to the school to pick up the child. On the ride home, Jackson asked the child if the boy involved was her boyfriend. The child replied that he was not her boyfriend. Jackson then stopped the car and pulled the child's hair.

{¶ 4} The child testified that Jackson continued to drive, stopping at the grocery store, before continuing to their home. There were no further incidents on the ride home. Once they arrived home, they brought the groceries inside, and Jackson asked the child to hand her a belt. The child complied with the request. The child then went to her grandfather's room to tell him what happened at school. Jackson entered the room and told the child to go to her room, which scared the child. Jackson followed the child into her room and closed the door. The child testified that Jackson spoke to her but she did not remember what Jackson said.

After that, Jackson hit the child with the belt. The child testified that Jackson hit her on her legs and arms. During the punishment, which lasted approximately two minutes, the child remembered Jackson speaking but not what she said, and the child remembered yelling for the child's brother.

{¶ 5} Afterward, Jackson left the room and the child went back to her grandfather's room. The child then heard Jackson get into an argument with the child's brother, and heard her brother leave. Prior to leaving, the brother called the police. The child attempted to follow him but Jackson dragged her back from the door, pulled her hair, and pushed her to the ground.

{¶ 6} Sometime later, the child returned to her grandfather's room. The child was not permitted to have a phone, so she attempted to use her grandfather's phone to call the police because she was scared. Jackson entered the room, and the three began talking. The child testified that Jackson put her hands on her throat for approximately four seconds and then the child removed her hands. The child recounted that Jackson did not squeeze her neck. When asked whether she had difficulty breathing at that time, the child responded, "Yeah — no, I don't — I don't remember." Later Jackson put one hand over the child's mouth and nose for approximately six seconds. The child was unable to breath during that time. Jackson removed her hands from the child's face on her own volition.

{¶ 7} Jackson later took the child to the police station. During the drive, the child testified that Jackson was on the phone with the police station telling them things that the child did not understand, such as, that "people don't understand that

other people have lives outside of them." The child testified that Jackson also called the house phone and told the person who answered not to answer the door for anyone.

{¶ 8} When they arrived at the police station, Jackson and the child were taken to an interview room. The child asked to speak to the police without Jackson present. An officer's body-camera video was admitted by the State and showed that Jackson initially refused to leave, explaining that she had been to the police multiple times regarding the child and her brother and that it was exhausting. Jackson eventually left the room.

{¶ 9} When asked if she still feared Jackson on the date of trial, the child testified that she did. She explained that there had been other incidents where Jackson hit her; however, the child denied being fearful that Jackson would hit her again on the night of the incident. She felt that Jackson would levy other punishments but would not get physical.

{¶ 10} The child testified that the police arrested Jackson after her interview. After Jackson was released from jail, the child left the home, although her brother remained in Jackson's custody.

{¶ 11} On cross-examination, the child acknowledged that she had been having problems at school for the past two years. When asked if she remembered how many times she was suspended during the 2023-2024 school year, the child did not remember; however, she would not disagree if she was told she was suspended seven times. During the 2024-2025 school year, she acknowledged being suspended

but disagreed when asked if she was suspended ten times. When asked to describe the punishments Jackson imposed for her misconduct, the child agreed she would be forbidden to go outside and denied access to a phone or computer.

{¶ 12} On redirect examination, the child testified that Jackson hit her with the belt previously and with her hands on one occasion, but never put her hands on the child's neck or over her nose and mouth prior to February 2025.

{¶ 13} Next, the State called Euclid Police Officer Gabrielle Crombie ("Officer Crombie") to testify. Officer Crombie testified that she was dispatched to Jackson's residence on a domestic violence call placed by the child's brother claiming his caregiver was "beating" his sister. Officer Crombie met the brother in the lobby then proceeded upstairs to Jackson's apartment.

{¶ 14} After knocking on the door, a young child called through the door and informed Officer Crombie and her partner that he was not permitted to open the door. Six to eight minutes later, Jackson's mother answered the door. Neither Jackson nor the child was home. The officers returned to the station, where Jackson and the child were waiting.

{¶ 15} Officer Crombie interviewed the child and took pictures of injuries on the child's right and left thigh, calf, and neck, where a "puffy nail mark" was located. Officer Crombie described the leg and calf injuries as fresh "welty" belt injuries. The child told Officer Crombie that she had pain in her legs and neck as a result of the injuries. She also told Officer Crombie that she could not breathe for a brief period.

Officer Crombie did not observe any other injuries except an old wound from a dog bite.

{¶ 16} On cross-examination, Officer Crombie testified that she did not believe there was an immediate need for the child to receive medical care. She also testified that she had been trained in observing the signs of strangulation, including fingernail marks or imprints on the neck and petechia in the eyes. When asked whether any of that was present in this case, Officer Crombie testified there was one mark, a red dot depicted in the picture of the child's neck.

{¶ 17} The defense presented Jackson as its sole witness. Jackson testified that she obtained custody of the child and her brother approximately five years prior to the incident. At the time, she was living in a one-bed room apartment, which she was informed was too small for her to house herself and two children. As a result, Jackson testified that she and her parents agreed to share an apartment so the children could live with them.

{¶ 18} With respect to the incident, Jackson initially testified that the child was expelled, then corrected herself and explained that the child was given a five-day suspension. When she arrived at the school, Jackson observed police and an ambulance. Jackson testified that they were there for another student, not the child. Jackson denied going to the grocery store on the way home, rather, the groceries were already in the car. On the way home, Jackson tried to talk to the child about her choices and assess why the situation at school happened. The child did not respond to Jackson's questions.

{¶ 19} When they arrived home, both of Jackson's parents, the child's brother, and Jackson's boyfriend's children were present. Jackson denied arguing with the child. She testified that she tried to talk to the child but she received more information from the school than the child. After putting the groceries away, Jackson testified that she told the child to go to her room for her "whipping."

{¶ 20} After the punishment, Jackson left the room and encountered the child's brother who was upset that Jackson had punished his sister. Jackson testified that he was verbally abusive towards her. She told him that he was going to respect her or he was going to have to leave her home. The brother then grabbed his things and left. At that point, Jackson testified that she called the police to report that the brother, a minor, had left her home.

{¶ 21} Jackson eventually took the child to the police station. She believed that the police did not want to talk to her, but wanted to talk to the child alone. Jackson was arrested after the child's interview. After she was released, the court placed a no-contact order between Jackson and the child. Jackson arranged for her sister to take the child. When her sister was hospitalized, Jackson arranged for her best friend to take the child, which was where the child was staying at the time of trial. Jackson testified that she retained custody of both children and that the child's brother still lived with her.

{¶ 22} On cross-examination, Jackson testified that the child had been transferred from four schools because of her behavior. When asked whether she sought therapy for the children, Jackson originally testified that they had been in

therapy in the last year. When pressed about only obtaining therapy in the last year, Jackson testified that the children had been going to therapy off and on for two to three years. With respect to the incident, Jackson claimed that the child appeared intoxicated, but denied taking the child for medical treatment. On further questioning, Jackson testified she believed the child was intoxicated because that was the information she received from the school.

{¶ 23} In regards to the punishment, Jackson claimed she hit the child with the belt four or five times and it lasted one minute. When the child tried to follow her brother and leave the house, Jackson stated that she stopped her by grabbing her coat and a "tussle" ensued because the child was determined to leave the house. Jackson suggested that the neck injury occurred at that time and denied strangling the child or covering her nose and mouth.

{¶ 24} The jury ultimately found Jackson not guilty of the strangulation and domestic-violence charges but guilty of the endangering-children charge. The trial court placed Jackson on community control for a period of one year.

{¶ 25} Jackson appeals raising the following assignment of error for our review.

## Assignment of Error

The State did not introduce sufficient evidence of substantial risk to the health and safety of minor at trial to sustain a conviction for [endangering children] under R.C. 2919.22(A).

**Law and Analysis**

{¶ 26} In her sole assignment of error, Jackson argues that the trial court erred when it denied her motion for acquittal under Crim.R. 29 because the State failed to present sufficient evidence to establish that she created a substantial risk to the health and safety of the child. We find Jackson's argument to be well taken.

**Standard of Review**

{¶ 27} Crim.R. 29(A) provides, "The court on motion of a defendant . . . after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses." Because "a Crim.R. 29 motion questions the sufficiency of the evidence, '[the appellate court applies] the same standard of review to Crim.R. 29 motions as [it uses] in reviewing the sufficiency of the evidence.'" *Fairview Park v. Peah*, 2021-Ohio-2685, ¶ 37 (8th Dist.), quoting *State v. Tenace*, 2006-Ohio-2417, ¶ 37.

{¶ 28} A sufficiency challenge requires an appellate court to determine whether the State has met its burden of production at trial and to consider not the credibility of the evidence but whether, if credible, the evidence presented would sustain a conviction. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991), citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

{¶ 29} "When analyzing a claim of sufficiency of the evidence, a reviewing court is neither permitted to assess the credibility of witnesses nor otherwise weigh the evidence." *State v. Young*, 2022-Ohio-3132, ¶ 47 (8th Dist.), citing *In re A.W.*, 2016-Ohio-7297, ¶ 33 (8th Dist.). Therefore, in a sufficiency — or Crim.R. 29(A) — assessment, the reviewing court assumes that witnesses testified truthfully and evaluates whether that testimony, along with any other direct or circumstantial evidence presented at trial, satisfies each element of the offense. *Cleveland v. Clark*, 2024-Ohio-4491, ¶ 39 (8th Dist.), citing *In re D.R.S.*, 2016-Ohio-3262, ¶ 23 (8th Dist.), and *State v. Wells*, 2021-Ohio-2585, ¶ 25 (8th Dist.).

{¶ 30} In order to establish endangering children under R.C. 2919.22(A), the State must present evidence that Jackson, while "having custody or control . . . of a child under eighteen years of age . . . create[d] a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support." The State must further establish that she acted recklessly. *Cleveland Hts. v. Cohen*, 2015-Ohio-1636, ¶ 25 (8th Dist.) (finding that the mens rea for endangering children is recklessness).

{¶ 31} "A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature." R.C. 2901.22(C). A "'[s]ubstantial risk' means a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist." R.C. 2901.01(A)(8). Furthermore, a

conviction under R.C. 2919.22(A) may be the result of a single act, and "'"[t]o prove the requisite 'substantial risk' element . . . there must be some evidence beyond mere speculation as to the risk of harm that could potentially occur due to a single imprudent act."'" *Cleveland v. Alrefaei*, 2020-Ohio-5009, ¶ 40 (8th Dist.), quoting *Cohen* at ¶ 25, quoting *State v. Hughes*, 2009-Ohio-4115, ¶ 21 (3d Dist.), quoting *Middletown v. McWhorter*, 2006-Ohio-7030, ¶ 11 (12th Dist.).

{¶ 32} Moreover, R.C. 2919.22(A) "is concerned with circumstances of neglect." *State v. Boyd,* 2020-Ohio-3450, ¶ 26 (8th Dist.), citing *State v. Kamel*, 12 Ohio St.3d 306, 309 (1984). This "neglect is characterized by acts of omission rather than acts of commission . . . [i.e.] an inexcusable failure to act in discharge of one's duty to protect a child where such failure to act results in a substantial risk to the child's health or safety." *Kamel* at *id.* The harm a child suffered is relevant evidence in a prosecution under R.C. 2919.22(A); however, it is not an element of the offense. *Cleveland Heights v. Cohen*, 2015-Ohio-1636, ¶ 27 (8th Dist.) (finding "it is not necessary to show an actual injury or a pattern of physical abuse by the defendant in order to support a conviction under R.C. 2919.22(A)"); *see generally State v. Lewis*, 2011-Ohio-187, ¶ 51 (5th Dist.) (finding sufficient evidence for conviction under R.C. 2919.22(A) where a parent left a two-month-old child unattended in a car in below freezing temperatures for 30 minutes despite the child suffering no injury); *State v. Crenshaw*, 2020-Ohio-4922 (8th Dist.) (finding insufficient evidence to support a conviction under R.C. 2919.22(A) where the evidence established that the parent hit the child in the head with a spoon, pushed her head

into a wall, and struck her legs three times with an extension cord because although there was some risk of a serious head injury there was not a substantial risk).

{¶ 33} Jackson argues that regardless of whether this court were to find that she breached a duty of care or protection to the child, the State's evidence fails to establish that she created a substantial risk to the health and or safety of the child. In contrast, the State argues that the evidence established that Jackson created a substantial risk to the health or safety of the child when she placed her hands around the child's neck; covered her mouth and impeded her breathing; pulled the child's hair while driving; pushed the child to the ground and pulled her hair when she attempted to leave; and failed to obtain medical treatment for the child after the child's alleged intoxication and the resultant injuries from the belt lashes. The State's arguments lack merit.

{¶ 34} Contrary to the State's argument, the offender's acts in and of themselves are not sufficient to establish substantial risk. A "substantial risk" to the health and safety of the child is more than a possibility, or even a significant chance; it requires more than mere speculation of the injury that could have occurred based on the defendant's actions. R.C. 2901.01(A)(8); *Alrefaei*, 2020-Ohio-5009, ¶ 40 (8th Dist.). For example, this court found that the evidence was sufficient to establish substantial risk where it established that the defendant, who was intoxicated, attacked his girlfriend in the room where a three-month-old baby was sleeping on a bed. The child was not harmed, but the evidence established that the defendant's actions were so turbulent that they caused a closet door to fall. Even

though the proximity of the door to the child was unknown, this court found that the evidence was sufficient to establish a substantial risk of harm to the health or safety of the child. *State v. Jemison*, 2025-Ohio-5629, ¶ 53 (8th Dist.).

{¶ 35} Substantial risk was also established in *State v. Jackson*. There, after being beaten with an extension cord, the child suffered visible damage to the eye causing a discharge to flow from the injury, requiring medical attention. This court found that the offender created a substantial risk to the health or safety of the child when despite the obvious evidence of an injury, the offender failed to take the child for medical treatment, resulting in the child suffering a loss of vision. *State v. Jackson*, 2004-Ohio-2332, ¶ 3-4, 24 (8th Dist.). Consequently, it was the offender's failure to provide treatment for the injury that created substantial risk to the health or safety of the child.

{¶ 36} In contrast, in *State v. Phillips*, the court of appeals found that the State failed to establish substantial risk where the evidence established that the mother's conduct was disciplinary and transitory, *State v. Phillips*, 2014-Ohio-5322, ¶ 2, 26 (5th Dist.) In that case, the mother decided to discipline the oldest of her five children when he became unruly while they were shopping. The mother took her son back to her van, holding him by the neck and upper torso according to witnesses and videotaped evidence. She later returned to the store, and there were no more issues with the children. Employees called the police, and the mother was charged and convicted for endangering children. The appellate court found that the State

failed to establish that the mother's conduct created a substantial risk to the health and safety of the child. *Id.*

{¶ 37} In *Crenshaw*, 2020-Ohio-4922 (8th Dist.), a case with facts similar to this one, the court found that the State presented insufficient evidence to establish a violation of R.C. 2919.22(A). There the parent hit the child on the head with a spoon, shoved the child into a wall, and lashed her legs two-three times with a belt after discovering the child had created a mess in the bathroom and failed to clean it up. Notably, the minor child did not suffer physical harm that necessitated medical attention. The evidence established that the child was taken to a physician two days after the incident and the physician did not order tests for head trauma because she did not believe they were necessary. *Id.* at ¶ 52. This court found that the evidence failed to establish Crenshaw created a substantial risk to the health or safety of the child.

{¶ 38} Comparing these cases to the facts here, we find that the record fails to reflect that any of Jackson's actions caused a substantial risk to the health or safety of the child. The testimony established that Jackson placed her hands on the child's neck for four seconds and did not squeeze. The child did not remember whether that act impeded her breathing. Next, Jackson covered the child's mouth and nose for six seconds, which did impede her breathing. The child testified that Jackson removed her hands and did not indicate loss of consciousness, dizziness, or other aftereffects of Jackson's actions. Assuming the child's breath was impeded in both instances, the State did not present any evidence to establish that the very brief

incidents created a substantial risk to the health or safety of the child, rather than a remote or significant possibility of risk.

{¶ 39} While the child testified that Jackson pulled her hair while they were in the car, she also testified that Jackson stopped the car before doing so. Other than the fact that Jackson pulled her hair, there was no testimony that Jackson lost control of the car, swerved in traffic, or in any other way created a substantial risk to the child at that time. With respect to the incident when the child tried to leave, the child testified that Jackson grabbed her, threw her to the ground, and pulled her hair. Other than the fact that it happened, the child did not testify regarding any pain or injury as a result of that incident, which would have created a substantial risk to her health or safety. While Jackson's methods of discipline are concerning, the record reflects that even the child believed that Jackson was acting to stop her from leaving the home.

{¶ 40} Finally, we examine whether Jackson's failure to obtain medical treatment because of the child's consumption of alcohol or lashes from the belt created a substantial risk to the health and safety of the child. During oral argument, the State argued that the child had been consuming alcohol all day and Jackson breached a duty when she failed to take the child for medical treatment. This argument is counterfactual. The child testified that she had a sip of alcohol. Even if we credit Jackson's testimony that she believed the child was intoxicated, she based that statement in large part on what the school told her. Moreover, there was no evidence that the child suffered ill effects that required medical treatment. For

example, there was no testimony that the child vomited, was unsteady on her feet, or lost consciousness. Regarding the belt lashes, the child did not testify regarding her pain or any treatment she received. Officer Crombie testified that the child told her that the injuries "hurt." Notably, Officer Crombie testified that after Jackson was arrested, Jackson's boyfriend was permitted to take the child back to Jackson's apartment. When asked whether she felt there was an immediate need for the child to obtain medical treatment, Officer Crombie testified that she "did not believe so."

{¶ 41} Based on the foregoing, we find that the State failed to present sufficient evidence that Jackson recklessly created a substantial risk to the health and safety of the child. Looking at the evidence in a light most favorable to the State, we cannot find that the State established that Jackson's actions or omissions were a violation of a duty of care that created a substantial risk to the health and safety of the child.

{¶ 42} Judgment reversed.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EMANUELLA D. GROVES, JUDGE

LISA B. FORBES, P.J., and
EILEEN A. GALLAGHER, J., CONCUR