[Cite as *In re J.A.*, 2023-Ohio-222.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

IN RE J.A.                                          :
                                                    :
                                                    :
                                                    :          No. 111743
A Minor Child                                       :
                                                    :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** January 26, 2023

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. DL21110954

---

### *Appearances:*

Sylvester Summers, Jr., Co., LPA, and Sylvester Summers,
Jr., *for appellant*.

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Liam E. Blake, Assistant Prosecuting
Attorney, *for appellee*.

EILEEN A. GALLAGHER, P.J.:

{¶ 1} Defendant-appellant J.A. appeals his adjudication of delinquency on one count of sexual imposition. J.A. contends that the adjudication was not supported by sufficient evidence and was against the manifest weight of the evidence. For the reasons that follow, we affirm the adjudication.

## I. Factual Background and Procedural History

{¶ 2} J.A. was born on July 14, 2004. He was 17 years old in November 2021.

{¶ 3} On December 7, 2021, the state filed a one-count complaint in juvenile court alleging that J.A. was a delinquent child because he committed an act that constitutes sexual imposition in violation of R.C. 2907.06(A)(1) on November 4, 2021.

{¶ 4} The matter proceeded to trial on May 17, 2022.

{¶ 5} The alleged victim, D.A., testified that she is 15 years old and attends Euclid High School. She said that as she was leaving the school at the end of the school day on November 4, 2021, a male person "grabbed" her "right breast" in a hallway at the school. D.A. testified that she did not know the person who touched her and had never seen or talked to him before. She said that she did not speak with him after the alleged incident, either. The state played surveillance video of the incident and D.A. identified herself in the video. D.A. confirmed that the video accurately depicted what happened to her.[1]

{¶ 6} On cross-examination, D.A. admitted that the entire incident lasted only a second or two. She admitted that she did not discuss the incident with any

---

[1] The two exhibits introduced at trial — the surveillance video and J.A.'s written statement, discussed below — are not in the record on appeal. It is the appellant's duty to ensure the completeness of the record on appeal. *E.g.*, *O'Donnell v. Northeast Ohio Neighborhood Health Servs.*, 8th Dist. Cuyahoga No. 108541, 2020-Ohio-1609, ¶ 75, fn. 6 ("The appellant has a duty to ensure that the record relating to his or her assignments of error is complete."); *Pietrangelo v. Hudson*, 2019-Ohio-1988, 136 N.E.3d 867, ¶ 22 (8th Dist.) ("It is the appellant's duty to ensure that [this court is provided] with all of the information needed to decide an assignment of error.") Accordingly, we must presume that these exhibits are consistent with the testimony describing the exhibits at trial.

other students at the school and no student told her that they saw someone grab her breast.

{¶ 7} D.A.'s mother ("Mother") testified that she went to the high school on November 4, 2021, to pick up D.A. Mother said D.A. called her and said "that something happened to her and she wanted to tell me when she got to me face-to-face."[2] She said D.A. had "fear in her voice." Mother said that D.A. was crying when she got to the car. She described that D.A. "was power walking" and "her eyes were like bugged"; she said she had never seen D.A. in such a state before that day.

{¶ 8} Mother said D.A. told her that someone had touched her inappropriately. She said D.A. could only tell her what color hoodie the male that touched her was wearing and that he was wearing a face mask. Mother testified that she spoke with a school resource officer and reported what happened. She said that the next day, she and D.A. went to the security office and spoke to "deputies" about the incident.

{¶ 9} Erica Rodriguez testified that she is a police officer with the Euclid Police Department and is assigned to Euclid Middle School and Euclid High School. She said that D.A. reported that someone had touched her breast inappropriately in the school hallway. Officer Rodriguez testified that she reviewed surveillance footage from the hallway and authenticated the state's video exhibit. She said that

---

[2] J.A. made certain objections to the admission of testimony during the trial, including to this conversation. J.A. has not claimed any error in the juvenile court's rulings on the admissibility of evidence in this appeal.

she and her colleagues notified security staff to look for a person matching the description of the male from the video. She said one of the security officers identified a male walking through the hallway "with the same exact hoodie and the same exact bookbag with the strap over his head and everything just as you see in the video." She said that the identified male — J.A. — was called into the security office.

{¶ 10} Officer Rodriguez testified that she interviewed J.A. about the alleged incident and J.A. "admitted to grabbing [D.A.] inappropriately." She said she asked J.A. if he knew D.A. and he said that he did not. She then asked him "why he did it" and J.A. said he did not have a reason for touching D.A. Officer Rodriguez said he admitted touching D.A. without her permission. Officer Rodriguez testified that she gave J.A. a form on which to complete a written statement about the incident and J.A. did write out a statement. Officer Rodriguez authenticated the state's exhibit as the statement J.A. filled out during the interview.

{¶ 11} Officer Rodriguez identified J.A. in the courtroom.

{¶ 12} On cross-examination, Officer Rodriguez admitted that she had only been a school resource officer at Euclid High School for a few days when this incident took place. She testified that she has been a police officer with the Euclid Police Department for four years and has been a police officer for seven years. She said she worked at two police agencies prior to joining the Euclid police, including serving as a school resource officer for another agency in the past.

{¶ 13} She further admitted that J.A. did not write that he "inappropriately" touched D.A. in his written statement. She said that J.A. verbally admitted that the contact was inappropriate but she admitted that she reviewed J.A.'s written statement and did not ask J.A. to change anything in that statement. She said she "[d]idn't need to" do so.

{¶ 14} The state admitted two exhibits without objection: the surveillance video, which was presented as a joint exhibit with the defense, and J.A.'s written statement.

{¶ 15} After the state rested its case, the defense made a motion for dismissal of the complaint. The magistrate denied the motion. The defense rested without presenting any additional evidence.

{¶ 16} The magistrate journalized a decision on May 17, 2022, finding that the state proved the allegations in the complaint beyond a reasonable doubt. J.A. filed timely objections to the decision.

{¶ 17} The juvenile court completed a dispositional hearing on June 14, 2022, placing J.A. on community control. J.A. filed a timely objection to the magistrate's dispositional decision.

{¶ 18} On July 1, 2022, the juvenile court journalized an order overruling J.A.'s objections and adopting the magistrate's decisions.

{¶ 19} J.A. appealed, raising the following two assignments of error for review:

Assignment of Error 1: The adjudication of appellant J.A. as a delinquent was not supported by the sufficiency of the evidence.

Assignment of Error 2: The adjudication of appellant J.A. as a delinquent is against the manifest weight of the evidence.

## II. Law and Analysis

{¶ 20} J.A. contends that the evidence presented at trial was not sufficient to support an adjudication of delinquency. He further argues that the adjudication was against the manifest weight of the evidence. We disagree.

{¶ 21} A juvenile court may adjudicate a juvenile to be a delinquent child when the evidence demonstrates, beyond a reasonable doubt, that the child committed an act that would constitute a crime if committed by an adult. R.C. 2151.35(A); Juv.R. 29(E)(4); *In re R.S.*, 8th Dist. Cuyahoga No. 99562, 2013-Ohio-5576, ¶ 26; *In re Williams*, 3d Dist. Marion No. 9-10-64, 2011-Ohio-4338, ¶ 18. Due to the "'inherently criminal aspects'" of delinquency proceedings, claims involving the sufficiency of the evidence and the manifest weight of the evidence in delinquency appeals are subject to the same standards of review applicable to criminal convictions. *In re T.J.*, 9th Dist. Summit No. 27269, 2014-Ohio-4919, ¶ 19, quoting *In re R.D.U.*, 9th Dist. Summit No. 24225, 2008-Ohio-6131, ¶ 6; *In re R.S.* at ¶ 26, citing *In re Watson*, 47 Ohio St.3d 86, 91, 548 N.E.2d 210 (1989); *see also In re S.H.*, 8th Dist. Cuyahoga No. 100529, 2014-Ohio-2770, ¶ 17, 25.

### A. Sufficiency of the Evidence

{¶ 22} A challenge to the sufficiency of the evidence supporting a conviction requires a determination of whether the state has met its burden of production at

trial. *State v. Hunter*, 8th Dist. Cuyahoga No. 86048, 2006-Ohio-20, ¶ 41, citing *State v. Thompkins*, 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997). Whether the evidence is legally sufficient to support a verdict is a question of law. *Thompkins* at 386. We must determine "'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. We do not assess whether the state's evidence is to be believed; we assess whether the evidence admitted at trial, if believed, supported the adjudication. *Thompkins* at 390 (Cook, J., concurring).

{¶ 23} In other words, we assume the state's witnesses testified truthfully and determine whether that testimony, along with any other evidence presented, satisfy each element of the offense. *In re D.R.S.*, 8th Dist. Cuyahoga No. 103584, 2016-Ohio-3262, ¶ 23. The elements of an offense may be proven by direct evidence, circumstantial evidence or both. *See, e.g.*, *State v. Wells*, 8th Dist. Cuyahoga No. 109787, 2021-Ohio-2585, ¶ 25, citing *State v. Durr*, 58 Ohio St.3d 86, 568 N.E.2d 674 (1991). "Direct evidence exists when 'a witness testifies about a matter within the witness's personal knowledge such that the trier of fact is not required to draw an inference from the evidence to the proposition that it is offered to establish.'" *Wells* at ¶ 25, quoting *State v. Cassano*, 8th Dist. Cuyahoga No. 97228, 2012-Ohio-4047, ¶ 13. Circumstantial evidence is "evidence that requires 'the drawing of

inferences that are reasonably permitted by the evidence.'" *Wells* at ¶ 25, quoting *Cassano* at ¶ 13; *see also State v. Hartman*, 8th Dist. Cuyahoga No. 90284, 2008-Ohio-3683, ¶ 37 ("[C]ircumstantial evidence is the proof of facts by direct evidence from which the trier of fact may infer or derive by reasoning other facts in accordance with the common experience of mankind."). Circumstantial evidence and direct evidence have "equal evidentiary value." *Wells* at ¶ 26, citing *State v. Santiago*, 8th Dist. Cuyahoga No. 95333, 2011-Ohio-1691, ¶ 12.

{¶ 24} The juvenile court found J.A. delinquent of sexual imposition in violation of R.C. 2907.06(A)(1). That statute provides, in relevant part, that "[n]o person shall have sexual contact with another, not the spouse of the offender * * * when * * * [t]he offender knows that the sexual contact is offensive to the other person * * * or is reckless in that regard." R.C. 2907.06(A)(1). "Sexual contact" means "any touching of an erogenous zone of another, including * * * if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).

{¶ 25} J.A. argues that (1) there was no evidence presented that J.A. compelled the victim by force or threat of force, which he argues is a required element of sexual imposition; (2) there was insufficient evidence that J.A. grabbed the victim's breast for the purpose of sexual gratification or arousal; (3) there was insufficient evidence that J.A. knew that grabbing the victim's breast would be offensive to her, or was reckless in that regard and (4) there was insufficient evidence because the victim could not identify J.A. as the person who touched her.

{¶ 26} The state responds that it was not required to prove that J.A. compelled the contact by force or threat of force and contends that there was sufficient evidence presented to sustain the adjudication.

{¶ 27} The state is correct about the elements of sexual imposition; it did not need to prove that J.A. compelled the sexual contact by force. Sexual imposition under R.C. 2907.06(A)(1), a misdemeanor of the third degree unless a defendant has certain previous convictions, is a different offense than gross sexual imposition under R.C. 2907.05(A)(1). Gross sexual imposition under R.C. 2907.05(A)(1), a felony of the fourth degree unless certain additional showings are made, *does* have a force element. The case J.A. cites in support of his argument that sexual imposition has a force element — *State v. Riggs*, 10th Dist. Franklin Nos. 04AP-1279 and 04AP1280, 2005-Ohio-5244 — addresses felony gross sexual imposition, not misdemeanor sexual imposition. *See Riggs* at ¶ 20. "'Sexual imposition is a lesser-included offense of gross sexual imposition because *it does not require proof of the additional element of force*.'" (Emphasis added.) *In re J.W.*, 8th Dist. Cuyahoga No. 109031, 2020-Ohio-4065, ¶ 17, quoting *State v. Roy*, 2014-Ohio-5186, 22 N.E.3d 1112, ¶ 42 (9th Dist.).

{¶ 28} There was sufficient evidence that J.A. grabbed the victim's breast for the purpose of sexual arousal or gratification. In determining whether sexual contact occurred, "'there is no requirement that there be direct testimony regarding sexual arousal or gratification.'" *E.g.*, *In re D.W.*, 8th Dist. Cuyahoga No. 110960, 2022-Ohio-1407, ¶ 23, quoting *State v. Tate*, 8th Dist. Cuyahoga No. 98221, 2013-

Ohio-370, ¶ 19. "'The purpose of the contact may be inferred from the type, nature, and circumstances of the contact.'" *In re D.W.* at ¶ 23, quoting *State v. Fears*, 8th Dist. Cuyahoga No. 104868, 2017-Ohio-6978, ¶ 65.

{¶ 29} Here, J.A. grabbed the breast of another student while walking in a school hallway. He had no relationship with the victim and, indeed, did not even know her. The evidence presented was such that the trial court could reasonably conclude that J.A.'s touching of the victim's breast was "not accidental or inadvertent; rather, it was a deliberate, premeditated act." *See State v. Brown*, 7th Dist. Mahoning No. 12 MA 118, 2014-Ohio-4158, ¶ 21. He admitted to Officer Rodriguez that he touched the victim inappropriately. When asked why he touched the victim, he said he had no reason. The evidence was sufficient to support a reasonable inference that J.A.'s action was for the purpose of sexual arousal or gratification.

{¶ 30} There was also sufficient evidence that J.A. knew that the sexual contact would be offensive to the victim or was reckless in that regard.

> A person acts knowingly * * * when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. * * *

R.C. 2901.22(B).

> A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature. * * *

R.C. 2901.22(C).

{¶ 31} In analyzing whether alleged offenders knew or were reckless as to the offensiveness of sexual contact, courts have considered — among other things — whether the contact was consensual or whether, considering the relationship between the alleged offender and the alleged victim, the touching was "a logical progression of the * * * physical contact the two had shared up to that point." *In re J.H.*, 9th Dist. Summit No. 27528, 2015-Ohio-4471, ¶ 20. J.A. had no relationship with the victim and did not know her; the contact was not consensual. There is nothing in the record to indicate that anything occurred that would have led J.A., who was 17 years old, to conclude that it would not be offensive to grab the breast of a girl he had never met and never spoken to in a school hallway while she was headed home after classes. Furthermore, Officer Rodriguez testified that J.A. admitted that his touching of the victim was inappropriate. These facts readily support a reasonable inference that J.A. knew that his touching the victim's breast would be offensive to her or was reckless in that regard.

{¶ 32} Finally, the fact that the victim could not identify J.A. as the person who touched her does not require reversal. Among other things, J.A. was identified by school security as wearing the same clothes and bookbag as the perpetrator in the surveillance video and J.A. was wearing his bookbag in the same unique manner as the perpetrator in the video, with the strap wrapped around his head. Further, when questioned about the victim's allegations, J.A. admitted that he touched the victim inappropriately and wrote a statement admitting to touching her. Officer Rodriguez identified J.A. in the courtroom as the juvenile who matched the description of the

perpetrator in the video and the juvenile who admitted to her that he touched D.A. inappropriately in the hallway. The evidence readily supports that J.A. was the juvenile who grabbed the victim's breast.

{¶ 33} Because the adjudication of delinquency was supported by sufficient evidence, we overrule J.A.'s first assignment of error.

### B. Manifest Weight of the Evidence

{¶ 34} We likewise find no merit to J.A.'s claim that the adjudication was against the manifest weight of the evidence. A manifest weight challenge attacks the credibility of the evidence presented and questions whether the state met its burden of persuasion at trial. *State v. Whitsett*, 8th Dist. Cuyahoga No. 101182, 2014-Ohio-4933, ¶ 26, citing *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541; *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 13.

{¶ 35} In determining whether a delinquency adjudication is against the manifest weight of the evidence, we review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence the juvenile court clearly lost its way and created such a manifest miscarriage of justice that the adjudication must be reversed. *In re R.S.*, 8th Dist. Cuyahoga No. 99562, 2013-Ohio-5576, at ¶ 27, citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). In conducting this review, this court remains mindful that the credibility of witnesses and the weight of the evidence are matters primarily for the trier of fact to assess. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the

syllabus. Reversal on manifest-weight grounds is reserved for the "'exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins* at 387, quoting *Martin*, *supra*.

{¶ 36} Here, J.A. merely restates the last three arguments in support of his first assignment of error, discussed above at paragraph 25. He points to no inconsistencies in the evidence.

{¶ 37} There is no evidence suggesting that J.A.'s contact with the victim's breast was for any purpose other than sexual arousal or gratification.

{¶ 38} There is nothing in the record to suggest that J.A. did not know that grabbing the victim's breast would be offensive to her.

{¶ 39} There is nothing in the record to suggest that J.A. was not the juvenile who grabbed the victim's breast.

{¶ 40} In short, this is not the "'exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins* at 387, quoting *Martin*, *supra*.

{¶ 41} We, therefore, overrule J.A.'s second assignment of error.

### III. Conclusion

{¶ 42} Having overruled both of J.A.'s assignments of error for the reasons stated above, we affirm the juvenile court's adjudication of delinquency.

It is ordered that the appellee recover from the appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas, Juvenile Division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, PRESIDING JUDGE

MICHELLE J. SHEEHAN, J., and
MARY EILEEN KILBANE, J., CONCUR