[Cite as *State v. Artagos*, 2024-Ohio-1369.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 113107 |
| v. | : | |
| DOMINIQUE ARTAGOS, | : | |
| Defendant-Appellant. | : | |

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART AND VACATED IN PART
**RELEASED AND JOURNALIZED:** April 11, 2024

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-23-679744-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Patrick White, Assistant Prosecuting Attorneys, *for appellee.*

Cullen Sweeney, Cuyahoga County Public Defender, and Rick Ferrara, Assistant Public Defender, *for appellant.*

EILEEN T. GALLAGHER, J.:

{¶ 1} Defendant-appellant, Dominique Artagos ("Artagos"), appeals a judgment of conviction and sentence, rendered after a jury verdict, and claims the following errors:

1.  Insufficient evidence supported appellant's conviction for improper handling of a firearm in a motor vehicle.

2.  The manifest weight of the evidence did not support appellant's conviction for improper handling of a firearm in a motor vehicle.

3. The trial court abused its discretion in ordering a child support order as a condition of community control.

{¶ 2} We affirm Artagos's conviction but remand the case to the trial court to vacate the condition of his community control requiring him to establish a child-support order.

## I.  Facts and Procedural History

{¶ 3} Artagos was charged with one count of improper handling of a firearm in a motor vehicle, in violation of R.C. 2923.16(D)(1), a fourth-degree felony.  The charge included a forfeiture-of-firearm specification pursuant to R.C. 2941.1417 and a furthermore clause alleging that Artagos owned or possessed a Glock 19, which was contraband derived through the commission of an offense or was an instrumentality that he used in the commission an offense.

{¶ 4} Officer Matthew Gilmer ("Officer Gilmer") testified at the jury trial that he is a patrol officer with the Euclid Police Department.  As part of his patrol duties, he and his partner, Officer Brandon Moore ("Officer Moore"), routinely check public parks at night because many people frequent the park to use drugs and alcohol after dark when the park is closed.  They were patrolling Sims Park in Euclid on the night of February 24, 2023, when they encountered Artagos and his friend, Heaven Jenkins ("Jenkins"), in a parked car after dark.

{¶ 5} Officer Gilmer approached the driver's side of the vehicle and Officer Moore approached the passenger's side. When Officer Gilmer shined a flashlight on the car, Artagos opened the driver's door and asked if everything was alright. Officer Gilmer informed Artagos that the park closes at dark. Artagos apologized and asked if he should leave the park. Officer Gilmer testified that he smelled burned marijuana as soon as Artagos opened the door. He also smelled the distinct odor of alcohol on Artagos's breath.

{¶ 6} Officer Gilmer asked Artagos for his identification. Artagos informed him that he did not have his license with him but that he had memorized his driver's license number, which he gave to police. Artagos repeatedly tried to exit the car and stand up, and the officers repeatedly asked him to remain seated. Artagos asked, "Is this a traffic stop?" to which Officer Gilmer replied, "Yes, you're in the park after night." Officer Gilmer asked if there was anything else in the car and whether Artagos had a firearm. Artagos replied that he had a firearm on his hip and that he had a concealed weapons permit.

{¶ 7} The officers explained to Artagos that he was being ticketed for trespassing because he was in the park after it was closed. Artagos asked if trespassing was an arrestable offense. The officers replied that ordinarily trespass is not an arrestable offense but they were going to search the car because they smelled marijuana emanating from the car. Artagos allowed the officers to take his firearm, and they placed it in their police cruiser. Thereafter, the officers escorted Artagos to the police cruiser where Officer Gilmer explained that they could have

"jammed him up" for drinking and smoking marijuana in the car in the park, but they were not going to do that. Artagos nodded his head in acknowledgment and said, "No, you're right man." Meanwhile, Officer Moore searched Artagos's car and found an empty can of Olde English malt liquor and a small jar of marijuana. (Tr. 180.) The officers' interaction with Artagos was captured on the officers' body cameras. Footage from the body cameras was played for the jury and introduced into evidence as state's exhibit Nos. 1.1, 1.2, 5.1, and 5.2.

{¶ 8} The officers confiscated Artagos's gun because they determined he was under the influence of alcohol and/or marijuana. (Tr. 176.) The officers did not perform any field sobriety tests, but both officers believed Artagos showed the typical signs of intoxication. Officer Gilmer testified that he did not perform field sobriety tests because he was not charging Artagos with operating a vehicle under the influence ("OVI"). He also wanted to avoid a confrontation with Artagos because he was already agitated. Officer Gilmer explained:

> I didn't want to get into a confrontation with Mr. Artagos as he was already pretty agitated. Our job is not to try to use force, it's to minimize force or not use force at all. I didn't feel there was any necessary reason to continue that testing.

(Tr. 200.) Officer Gilmer explained that the field sobriety tests "[do] not determine someone's impairment level on marijuana, it only determines their impairment level on alcohol." (Tr. 200.) He testified that field sobriety testing is one way to determine if a person is intoxicated, but there are others. He explained that he was

trained to determine whether someone is intoxicated based on "a person's actions, demeanor, and their appearance." (Tr. 199.)

{¶ 9} Officer Gilmer testified that he encounters intoxicated individuals on an almost daily basis and that he has interacted with thousands of intoxicated people during his 13-year career as a police officer. (Tr. 164.) Officer Gilmer is also a state instructor for field sobriety. (Tr. 164.) Officer Gilmer testified that upon meeting Artagos, he immediately noticed typical signs of impairment including "glassy eyes, bloodshot, slurred speech, and the repetitive questioning of commands, and having to repeat [him]self multiple, multiple times to get any compliance[.]" (Tr. 170.)

{¶ 10} Officer Moore also testified that he observed signs of intoxication when interacting with Artagos. He stated:

> Mr. Artagos was very repetitive. He kept asking the same questions, saying the same things. I detected an odor of alcohol on his breath, and I even mentioned it to him.

(Tr. 224.) Officer Moore observed agitated behavior, red, glassy eyes, and slurred speech. (Tr. 232.) Finally, Officer Moore testified that he smelled the odor of marijuana emanating both from the car and from Artagos himself. (Tr. 224.)

{¶ 11} Officer Gilmer testified that Jenkins did not present any signs of intoxication. (Tr. 180.) Her speech was "very normal," her eyes were not glassy, and Officer Gilmer did not detect any alcohol on her breath. She was also very cooperative. Therefore, rather than arresting Artagos, they instructed him to ride home with Jenkins. (Tr. 184.)

{¶ 12} Artagos testified at trial and denied smoking marijuana. He stated that he smokes Black & Mild cigars and that he smoked a cigar and cigarettes in the car. (Tr. 279.) Artagos also denied drinking alcohol on the night in question. He explained that the empty beer can was probably there from the day before. (Tr. 279.) Artagos stated that he has allergies, which might explain why his eyes were red, and he has braces which might explain why the police thought he was slurring his speech. Finally, Artagos explained that he and Jenkins had been in the park for hours before the police arrived on the scene. (Tr. 279-280.)

{¶ 13} At the conclusion of the trial, the jury found Artagos guilty of improper handling of a firearm in a motor vehicle but not guilty on the furthermore specification requiring forfeiture of his weapon. The court sentenced him to one and a half years of community-control sanctions. As a condition of community control the court ordered Artagos to establish a child-support order and to provide verification of the order to the probation department within 60 days of the court's sentencing entry. Artagos now appeals the trial court's judgment.

## II. Law and Analysis

### A. Sufficiency and Manifest Weight

{¶ 14} In the first assignment of error, Artagos argues there is insufficient evidence to support his conviction. He contends there is no evidence that he was under the influence when Officers Gilmer and Moore encountered him at Sims Park on the night of February 24, 2023. In the second assignment of error, Artagos argues that even if there were sufficient evidence establishing that he was "under the

influence," the evidence was not credible and his conviction is against the manifest weight of the evidence.

{¶ 15} Although the terms "sufficiency" and "weight" of the evidence are "quantitatively and qualitatively different," we address these issues together because they are closely related, while applying the distinct standards of review. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

{¶ 16} The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 17} In contrast to sufficiency, "weight of the evidence involves the inclination of the greater amount of credible evidence." *Thompkins* at 387. While "sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, * * * weight of the evidence addresses the evidence's effect of inducing belief." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, citing *Thompkins* at 386-387. "In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's?" *Id.*

{¶ 18} In a manifest-weight-of-the evidence challenge, the reviewing court must consider all the evidence in the record, the reasonable inferences, and the credibility of the witnesses to determine "'whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983).

{¶ 19} Artagos was convicted of improper handling of firearm in a motor vehicle in violation of R.C. 2923.16(D)(1), which states that "[n]o person shall knowingly transport or have a loaded handgun in a motor vehicle if, at the time of that transportation or possession, * * * [t]he person is under the influence of alcohol, a drug of abuse, or a combination of them."

{¶ 20} The term "under the influence" has been defined as

> "'the condition in which a person finds himself after having consumed some intoxicating beverage in such quantity that its effect on him adversely affects his actions, reactions, conduct, movement or mental processes or impairs his reactions to an appreciable degree, thereby lessening his ability to operate a motor vehicle.'"

*Cleveland v. Martin*, 2018-Ohio-740, 107 N.E.3d 809, ¶ 20 (8th Dist.), quoting *State v. Carozza*, 2015-Ohio-1783, 33 N.E.3d 556, ¶ 22 (5th Dist.), quoting *Toledo v. Starks*, 25 Ohio App.2d 162, 166, 267 N.E.2d 824 (6th Dist.1971). In addition, "'[u]nder the influence' means that the accused consumed some intoxicating beverage, in such a quantity 'whether small or great' that adversely affected the accused's ability to operate a vehicle." *Id.* Not every case will involve overt signs of

intoxication. *Id.*, citing *Chagrin Falls v. Bloom*, 8th Dist. Cuyahoga No. 101686, 2015-Ohio-2264, ¶ 9.

{¶ 21} Artagos argues there is insufficient evidence to establish that he was intoxicated because he testified that he did not consume any alcohol or marijuana. However, Officers Gilmer and Moore both testified that Artagos exhibited many telltale signs of intoxication, including glassy eyes, slurred speech, agitated behavior, and repetitive questioning of commands. (Tr. 170, 224-225.) The officers smelled marijuana emanating both from Artagos's car and from Artagos himself. They also smelled alcohol on his breath when he spoke. Moreover, they found evidence of both marijuana and alcohol in his car. Therefore, there was sufficient evidence that Artagos was under the influence when the police encountered him on the night of February 24, 2023.

{¶ 22} Artagos further asserts that his conviction is against the manifest weight of the evidence because he served nine years in the Marines and is a skilled weapons operator. He also argues his conviction is against the manifest weight of the evidence because he testified that he did not consume any alcohol or marijuana on the night in question and the body-camera footage does not accurately reflect his condition. Artagos contends the officers' opinion testimony that he was under the influence lacks credibility because it was not corroborated with objective tests such field sobriety, breath, or blood-alcohol testing. He also asserts the fact that the officers did not arrest him but released him to his own car is proof that he was not intoxicated.

{¶ 23} Although Artagos's military service is commendable, it is irrelevant to the question of whether he was under the influence when Officers Gilmer and Moore confiscated his firearm. The lack of field sobriety testing and blood or breath testing is also not dispositive of Artagos's claim. Officers Gilmer and Moore both had extensive experience interacting with intoxicated citizens and were familiar with the signs and symptoms of intoxication. The officers testified that Artagos smelled of alcohol and marijuana, presented with glassy eyes and slurred speech, and exhibited agitated behavior typical of a person under the influence. (Tr. 232 and 176.) Although it is difficult to see whether Artagos had bloodshot or glassy eyes in the body-camera footage, his repetitive questioning of the officers' commands and his agitated behavior is evident. The officers testified, and the body camera shows, that they found an empty can of malt liquor and marijuana in Artagos's car.

{¶ 24} The fact that the officers released Artagos rather than arresting him is also not proof that he was sober. Officer Gilmer explained that they released Artagos rather than arresting him because Jenkins did not exhibit any signs of intoxication and the officers instructed him to ride home with her. Furthermore, the fact that the officers did not cite Artagos for OVI does not establish that he was sober because Officer Gilmer testified that they did not arrest him for OVI because they did not witness him operating the vehicle.

{¶ 25} There was competent, credible evidence to support the jury's finding that Artagos was under the influence at the time Officers Gilmer and Moore confiscated his firearm. Therefore, this is not a rare case in which the jury clearly

lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

{¶ 26} The first and second assignments of error are overruled.

## B. Child-Support Order

{¶ 27} In the third assignment of error, Artagos argues the trial court abused its discretion in ordering him to establish a child-support order as part of his community control. The state concedes the error. Indeed, this court has held that a trial court errs and abuses its discretion by issuing a child-support order as a condition of community control where the "child-support order does not share a relationship" with the offense. *State v. Cintron*, 8th Dist. Cuyahoga No. 110600, 2022-Ohio-305, ¶ 24. The trial court's order requiring Artagos to establish a child-support order is not related to his improper handling of a firearm in a motor vehicle conviction. Therefore, the third assignment of error is sustained.

{¶ 28} The trial court's judgment is affirmed in part and vacated in part. We affirm Artagos's convictions but vacate the community-control condition requiring Artagos to establish a child-support order within 60 days of the sentencing entry.

It is ordered that appellee and appellant share costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27

of the Rules of Appellate Procedure.

---

EILEEN T. GALLAGHER, JUDGE

MICHELLE J. SHEEHAN, P.J., and
EMANUELLA D. GROVES, J., CONCUR