[Cite as *State v. Maxwell*, 2026-Ohio-2411.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff- Appellee,            :

                              No. 115578

v.                                      :

TIMOTHY MAXWELL,                        :

    Defendant-Appellant.            :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** June 25, 2026

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-24-695176-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Matthew W. Moretto, Assistant Prosecuting Attorney, *for appellee.*

John F. Corrigan, *for appellant.*

MICHELLE J. SHEEHAN, A.J.:

{¶ 1} Defendant-appellant Timothy Maxwell ("Maxwell") appeals his conviction for burglary pursuant to R.C. 2911.12(A)(1). Maxwell challenges the sufficiency and weight of the evidence underlying the conviction. His appeal focuses

on the evidence introduced to support the jury's conclusion that he trespassed in the presence of another person and with the intent to commit a crime. After a thorough review of the record, we find that Maxwell's burglary conviction is both supported by sufficient evidence and is not against the manifest weight of the evidence. We overrule Maxwell's assignments of error and affirm the judgment.

## Statement of Facts

### Background

{¶ 2} Maxwell and E.R. met in 2006 and dated for approximately 15 years. During this time, the couple welcomed a child and lived together at several different locations. In April 2021, their romantic relationship ended.

{¶ 3} After the relationship ended, E.R. moved into a duplex located at on Henritze Avenue in Cleveland, Ohio ("Henritze Property"). The duplex contained two separate apartments and a basement. The first-floor apartment was occupied by E.R. and the child she shared with Maxwell. The second-floor apartment was occupied by Dawn Derry ("Derry"). The basement was considered shared space where either tenant could access and store their property.

{¶ 4} The Henritze Property was owned by Mathew Derry, a relation of Derry. E.R. had a verbal agreement to rent the first-floor apartment in exchange for services including helping Derry with errands and assisting her as needed. E.R. also agreed to help with repairs and general maintenance of the Henritze Property.

{¶ 5} After their breakup and for some time thereafter, E.R. stored personal belongings of Maxwell's at the Henritze Property. She agreed to store his property

because Maxwell did not have a place to live. Maxwell attempted to retrieve his belongings numerous times. Since June 2023, however, E.R. no longer permitted Maxwell to visit the Henritze Property.

{¶ 6} Thus, in December 2023, arrangements were made for Maxwell's son, Thomas Maxwell, to pick up Maxwell's belongings from E.R. At that time, E.R. returned a trunk containing Maxwell's belongings and some clothing items to Thomas Maxwell. E.R. testified that she did not think she had any more of Maxwell's property in her possession. Maxwell, however, continued to contact E.R. through third parties to recover additional personal belongings he claimed were still located at the Henritze property.

{¶ 7} At some time in 2024, the Henritze Property went into foreclosure and a sale of the property was initiated. While E.R. was aware of the foreclosure proceedings, she was never told that she needed to vacate the Henritze Property. E.R. also never told her landlord that she was leaving the property. As of the date of trial, E.R. continued to come and go from the Henritze Property and her belongings remained there.

**Incident**

{¶ 8} At approximately 9:00 p.m. on September 18, 2024, Derry was taking her garbage out to the street. She noticed a gentleman approaching and recognized him as Maxwell. Derry had previously met Maxwell when he would visit his child at the Henritze Property. Derry knew Maxwell and E.R. were no longer dating.

{¶ 9} Maxwell was accompanied by Thomas Maxwell, and they parked their truck on a street near the Henritze Property. Maxwell knew E.R. was not at home that evening, and he did not have her permission to be on the Henritze Property that night. According to Thomas Maxwell, Maxwell believed E.R. had moved out because of the pending foreclosure. In contrast, E.R. testified that she was staying with friends on that day because she was afraid to stay at the Henritze Property. E.R. explained that she often tried to stay at other places because she was afraid of Maxwell. E.R.'s belongings, however, remained at the Henritze Property, and she stated that she intended to return there. Derry also believed E.R. would be back.

{¶ 10} Maxwell asked Derry if she would let him into the basement to retrieve his belongings. Derry acquiesced and led him to the back of the Henritze Property. Derry unlocked the back door and allowed Maxwell to enter and go into the basement. Derry observed Maxwell make four to five trips in and out of the basement.

{¶ 11} Derry then witnessed Maxwell entering E.R.'s first-floor apartment. Derry was standing in the common area just outside the entranceway into her apartment. Derry told Maxwell that she did not think that it was a good idea for him to go in there. She watched Maxwell enter the apartment through the kitchen and then go into his child's bedroom. Maxwell removed several items from E.R.'s first-floor apartment including a coffee mug.

{¶ 12} At some point during this time, Derry contacted E.R. and told her that Maxwell was there and in her apartment. E.R. called the police. The police arrived,

located Maxwell coming out of the basement, witnessed him removing items from the Henritze Property, and arrested him.

**Trial and Sentencing**

{¶ 13} Maxwell was indicted on September 13, 2024. He was charged with one count of burglary in violation of R.C. 2911.12(A)(1) and one count of burglary in violation of R.C. 2911.12(B). Maxwell pled not guilty. On June 16, 2025, a two-day jury trial was held. During the trial, the State presented the testimony of E.R., Derry, and a Cleveland police officer. The defense presented the testimony of Thomas Maxwell. The jury returned a verdict of guilty on both counts of the indictment.

{¶ 14} At sentencing, Counts 1 and 2 were merged and the State elected to proceed on Count 1 — burglary under R.C. 2911.12(A)(1). Maxwell was sentenced to two to three years in prison and to two to five years of postrelease control. This appeal follows.

**Assignment of Error No. 1 — Sufficiency of the Evidence**

{¶ 15} In his first assignment of error, Maxwell asserts that his burglary conviction is not supported by sufficient evidence. Specifically, Maxwell contends that the State failed to introduce sufficient evidence establishing the essential elements of a trespass, the presence of another, and his intent to commit a criminal offense. Consequently, he argues that his burglary conviction must be overturned. After our independent review of the record and applicable law, we find that the State met its burden of production and sufficient evidence exists to support Maxwell's

conviction for burglary pursuant to R.C. 2711.12(A)(1). Assignment of error No. 1 is overruled.

**Standard of Review**

{¶ 16} "The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial." *State v. Artagos*, 2024-Ohio-1369, ¶ 16 (8th Dist.), citing *State v. Bowden*, 2009-Ohio-3598, ¶ 12-13 (8th Dist.). When reviewing the sufficiency of the evidence, we must determine "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*, citing *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "We do not assess whether the state's evidence is to be believed; we assess whether the evidence admitted at trial, if believed, supported the adjudication." *In re J.A.*, 2023-Ohio-222, ¶ 22 (8th Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380, 390 (1997).

{¶ 17} "In other words, we assume the state's witnesses testified truthfully and determine whether that testimony, along with any other evidence presented, satisfy each element of the offense." *Id.* at ¶ 23, citing *In re D.R.S.*, 2016-Ohio-3262, ¶ 23 (8th Dist.). We do not consider the credibility of the witnesses when reviewing a sufficiency-of-the-evidence claim. *State v. Williams*, 2013-Ohio-1181, ¶ 27 (8th Dist.). The testimony of one witness, if believed by the factfinder, is sufficient. *State v. Adams*, 2014-Ohio-4233, ¶ 14 (5th Dist.). "The elements of an offense may be proven by direct evidence, circumstantial evidence or both." *In re J.A.* at ¶ 24. A

conviction may not be overturned under this standard "unless we find that reasonable minds could not reach the conclusion reached by the trier of fact." *State v. Treesh*, 90 Ohio St.3d 460, 484 (2001).

**Burglary Under R.C. 2911.12(A)(1)**

{¶ 18} Maxwell was convicted of burglary pursuant to R.C. 2911.12(A)(1), which provides, in pertinent part:

> (A) No person, by force, stealth, or deception, shall do any of the following:
>
> (1) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit, in the structure or in the separately secured or separately occupied portion of the structure any criminal offense.

{¶ 19} Based on the above, the essential elements of burglary under R.C. 2911.12(A)(1) are (1) by force, stealth, or deception; (2) trespass; (3) in an occupied structure or portion thereof; (4) when another person is present; and (4) with a purpose to commit a criminal offense. As set forth above, Maxwell argues that the State failed to present sufficient evidence of a trespass, presence of another person, and his intent to commit a criminal offense.

**Trespass**

{¶ 20} Regarding trespass, Maxwell argues that there is no evidence that he trespassed on the Henritze Property because E.R. had abandoned the property and therefore could not grant or deny him permission to enter the premises. Maxwell argues that E.R. had moved out of the Henritze Property because of the pending

foreclosure and was not merely temporarily staying elsewhere. He also appears to assert, without legal authority, that because E.R. did not have a traditional rental agreement for the Henritze Property that she could not exclude him from the property. We are unpersuaded by his arguments.

{¶ 21} Criminal trespass is defined in R.C. 2911.21 which provides:

(A) No person, without privilege to do so, shall do any of the following:

(1) Knowingly enter or remain on the land or premises of another.

Privilege is defined as "an immunity, license, or right conferred by law, bestowed by express or implied grant, arising out of status, position, office, or relationship, or growing out of necessity." *State v. Mahalli*, 2025-Ohio-1551, ¶ 17 (8th Dist.), citing R.C. 2901.01(A)(12). Further, trespass is "an invasion of the possessory interest of the property, not an invasion of title." *Id.* at ¶ 20, citing *State v. Herder*, 65 Ohio App.2d 70, 74 (10th Dist. 1979). To establish trespass, "[t]he State had to prove that the person(s) or entities that held a possessory interest in the property did not give" defendant the privilege to enter. *Id.*

{¶ 22} Viewing the evidence in a light most favorable to the prosecution, it is reasonable to conclude that E.R. had a possessory interest in the first-floor apartment and, moreover, that E.R. did not give Maxwell permission to enter the premises. E.R.'s testimony demonstrates that she had a verbal agreement to rent the first-floor apartment beginning in 2023 and including on the day of the incident. E.R. and her daughter occupied the first-floor apartment. E.R. also testified that she often stayed at other places and that she did so because she was afraid. E.R. testified

that she intended to return to the Henritze Property, that she was never told to leave the Henritze Property, and that she never told anyone she was leaving the Henritze Property. There is no dispute that her belongings were at the Henritze Property. Based on this evidence, the State presented sufficient evidence that E.R. had a possessory interest in the first-floor apartment.

{¶ 23} Further, sufficient evidence was presented by the State demonstrating that Maxwell did not have E.R.'s permission to be at the Henritze Property, including her first-floor apartment. The evidence indicated that Maxwell did not have permission to be on the Henritze Property since June 2023. Derry's testimony established that Maxwell entered E.R.'s first-floor apartment, including the kitchen and one of the bedrooms. Thus, the State presented evidence, if believed, establishing that Maxwell entered the premises of another without permission, and therefore presented sufficient evidence of a trespass.

**Presence of Another Person**

{¶ 24} A burglary conviction under R.C. 2911.12(A)(1) requires "another person other than an accomplice of the offender" to be "present" during the trespass. "Present" is not defined by the statute. Here, Maxwell contends, without legal authority, that to satisfy the present requirement, the other person must be physically within the occupied structure during the trespass. In contrast, the State argues that the present requirement is satisfied if the other person is in proximity to the occupied structure during the trespass.

{¶ 25} Our review of the relevant caselaw reveals that the present requirement is satisfied when the other person is in proximity of the occupied structure during the trespass. For example, this court in *State v. Smith*, 2010-Ohio-1655, ¶ 21 (8th Dist.), concluded another person was "actually present" during the trespass when the person was outside on the lawn of her house while it was being burglarized. Additionally, in *State v. Davis*, 2020-Ohio-3199, ¶ 28 (2d Dist.), the Second District, after reviewing several authorities, determined that another person was present when the "other person was inside, immediately outside, or contemporaneously entering" the occupied structure. *See State v. Dewitt*, 2009-Ohio-5903, ¶ 11-13, 16 (3d Dist.) (The other person was present when standing immediately outside the back of the home during the burglary.); *State v. K.W.*, 2016-Ohio-7365, ¶ 20-21 (12th Dist.) (Homeowners were present while in their front yard during the burglary.); *State v. Crawford*, 2004-Ohio-3895, ¶ 11-12 (1st Dist.) (While other persons were not in the separately occupied portion of the structure being trespassed, they were present in the occupied structure itself and therefore within proximity to the defendant.).

{¶ 26} The record demonstrates that Derry was standing outside the entrance to E.R.'s first-floor apartment where she observed Maxwell entering the apartment, including the kitchen and a bedroom. Derry watched Maxwell remove items from the apartment. She also communicated with him while he was in the apartment. Based on this evidence and the relevant authority above, we find that

the State presented sufficient evidence from which the jury could reasonably conclude that Derry was present during Maxwell's trespass.

### Intent to Commit a Criminal Offense

{¶ 27} The final element challenged by Maxwell is his intent to commit a criminal offense. Maxwell argues that that State failed to establish his intent to commit a criminal offense, here a theft, because the evidence demonstrates that he was only on the Henritze Property to retrieve his own belongings. We disagree.

{¶ 28} Intent ""can never be proved by the direct testimony of a third person and it need not be. It must be gathered from the surrounding facts and circumstances."" *State v. Grady*, 2002 Ohio App. LEXIS 1093, *24 (8th Dist. Mar. 14, 2002), quoting *State v. Lott*, 51 Ohio St.3d 160, 168 (1990), quoting *State v. Huffman*, 131 Ohio St. 27 (1936), paragraph four of the syllabus. Thus, the intent to commit a theft offense ""may be inferred from the circumstances surrounding the crime."" *In re D.R.S.*, 2016-Ohio-3262, ¶ 27 (8th Dist.), quoting *State v. Fasino*, 2015-Ohio-2265, ¶ 15 (8th Dist.), quoting *State v. Herring*, 94 Ohio St.3d 246, 266-267 (2002), quoting *State v. Johnson*, 93 Ohio St.2d 240 (2001), syllabus. "'Because intent dwells in the mind of the accused,' *Fasino* at ¶ 15, citing [*Treesh*, 90 Ohio St.3d at 484-485], it is 'not susceptible of objective proof' and must be 'gathered' and inferred from the act itself, the manner in which the act is done, the means used and all of the other surrounding facts and circumstances." *In re D.R.S.* at ¶ 27.

{¶ 29} Additionally, this court has previously held that "when a person is apprehended following a trespass, it is reasonable to infer that he did "'so with the

intent to commit a theft offense, in the absence of circumstances giving rise to a different inference.'"'" *State v. Riddick*, 2020-Ohio-1117, ¶ 16 (8th Dist.), quoting *State v. Powers*, 2006-Ohio-2458, ¶ 23 (8th Dist.), quoting *State v. Miller*, 2002-Ohio-1416 (8th Dist.). However, "a jury is not required to accept a competing inference of innocence if it may infer guilt, beyond a reasonable doubt, from the same circumstances." *Id.*, citing *State v. Levingston*, 106 Ohio App.3d 433, 437 (2d Dist. 1995). "'For purposes of defining the offense of burglary under R.C. 2911.12(A), a defendant may form the purpose to commit a criminal offense at any point during the course of a trespass.'" *State v. Tyson*, 2011-Ohio-4981, ¶ 31 (10th Dist.), quoting *State v. Moore*, 2006-Ohio-2800, ¶ 8 (12th Dist.); *see also State v. Fontes*, 87 Ohio St.3d 527, 530 (2000) (For purposes of defining aggravated burglary, a defendant may form the purpose to commit a criminal offense at any point during the course of the trespass.).

{¶ 30} Based on the record, we find sufficient evidence from which the jury could conclude Maxwell intended to commit a criminal offense when he trespassed on the Henritze Property. Specifically, the evidence introduced by the State demonstrates that Maxwell knew he was not permitted on the Henritze Property. Thus, Maxwell intentionally went to the Henritze Property when he knew E.R. would not be there. Maxwell went to the Henritze Property at night. He parked close to the Henritze Property but not on the property. Maxwell asked Derry for permission to enter the basement, but once inside, he entered E.R.'s first-floor apartment, again without E.R.'s permission. Perhaps Maxwell first came to the

Henritze Property to retrieve his own possessions. However, the jury could reasonably conclude that Maxwell developed an intent to commit a theft when he decided to enter E.R.'s first-floor apartment. In summary, the jury was not required to believe Maxwell's proffered explanation that he was only on the Henritze Property to retrieve his own belongings and sufficient evidence existed on the record permitting the jury to infer his intent to commit a theft offense beyond a reasonable doubt.

{¶ 31} Based on all the above, we find that Maxwell's conviction for burglary under R.C. 2911.12(A)(1) was supported by sufficient evidence. Assignment of error No. 1 is overruled.

## Assignment of Error No. 2 — Manifest Weight of the Evidence

{¶ 32} Under this assignment of error, Maxwell argues for the same reasons set forth above that the manifest weight of the evidence does not support the jury's conclusion that he (1) trespassed (2) in the presence of another (3) with the intent to commit a crime. After our independent review of the record and incorporating our discussion under assignment of error No. 1, we do not find that this is the exceptional case in which the evidence weighs heavily against conviction. Assignment of error No. 2 is not well-taken.

### Standard of Review

{¶ 33} "A manifest weight challenge questions whether the state has met its burden of persuasion." *State v. Townsend*, 2019-Ohio-544, ¶ 20 (8th Dist.), citing *Thompkins*, 78 Ohio St.3d at 390. A challenge alleging that convictions are

against the manifest "'[w]eight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. . . . Weight is not a question of mathematics, but depends on its effect in inducing belief.""' *State v. Hughes-Davis*, 2025-Ohio-3151, ¶ 24 (8th Dist.), quoting *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 12, quoting *Thompkins* at 387. The Ohio Supreme Court has reminded us that when conducting a manifest-weight review, we "must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *In re Z.C.*, 2023-Ohio-4703, ¶ 14, citing *Eastley* at ¶ 20. As such, a manifest-weight-of-the-evidence challenge will be sustained ""'only in the exceptional case in which the evidence weighs heavily against the conviction.""' *State v. Dodson*, 2025-Ohio-1733, ¶ 12 (8th Dist.), quoting *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983).

**Analysis**

{¶ 34} The evidence introduced at trial demonstrates that Maxwell knew that E.R. (and his daughter) occupied the first-floor apartment at the Henritze Property. He also knew he was not permitted at the Henritze Property. Indeed, he knew that he had not been permitted at the Henritze Property since June 2023. This conclusion is supported by the testimony that Maxwell needed to communicate with E.R. through third parties.

{¶ 35} The evidence further showed that on the night of the incident, Maxwell went to the Henritze Property when he knew E.R. would not be home. He went at night, parking near the property but not on the property. Maxwell, because he knew he was not permitted to be there, asked Derry to let him into the basement. Derry testified that she witnessed Maxwell make four to five trips in and out of the basement. Maxwell then used Derry's permission to enter the basement to gain unauthorized access to E.R.'s first-floor apartment. Derry's testimony established that she stood in the common area just outside E.R.'s first-floor apartment and watched as Maxwell entered the apartment, walked through E.R.'s kitchen and a separate bedroom, and removed items. Considering this evidence, we cannot find that the jury clearly lost its way and created a manifest miscarriage of justice. Nor can we conclude that Maxwell's burglary conviction was against the manifest weight of the evidence. Assignment of error No. 2 is not well-taken.

{¶ 36} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHELLE J. SHEEHAN, ADMINISTRATIVE JUDGE

LISA B. FORBES, J., and
EMANUELLA D. GROVES, J., CONCUR